Case 23.—PROSECUTION AGAINST THOMAS WHITE FOR THE
MURDER OF J. B. MARCUM.—March 17.

## White v. Commonwealth.

Appeal from Harrison Circuit Court.

J. J OSBURN, Circuit Judge.

Defendant convicted and appeals.    Affirmed.

Homicide—Motion for Change of Venue—Withdrawn—Subsequent
Change—Effect—Jail—Security of Prisioner—Discretion of
Court—Impeaching Witness—Incompetent Evidence—Harm-
less Error—Excluded Evidence—Admonition to Jury—Special
Terms—Notice—Summoning Jury Therefor—Stating Case to
Jury—Employed Attorney.

1. Homicide—Motion for Change of Venue—Motion Sustained—
Withdrawn—Order not Made—Mistrial—Subsequent Change
of Venue—Effect—Where defendant was indicted for murder
in B. county, and the attorney for the Commonwealth applied
for a change of venue, to which the defendant objected, and
the court announced from the bench that he would sustain
the motion and move the trial to M. county, and before the
order was entered permitted the attorney for the Common-
wealth to withdraw the motion for a change of venue, and after
the case was tried in B. county, resulting in a hung jury, the
attorney for the Commonwealth renewed his motion for a
change of venue, which the court granted, and removed the
trial to H. county, against the objection of the defendant,
Held—Under Kentucky Statutes, section 1118, providing that
"no more than one change of venue, or application therefor,
shall be allowed to any person or to the Commonwealth in
the same case," the first application having been withdrawn,
the last one should be regarded as the only one made in the
case.

2. Jail—Security of Prisoner—Discretion of Court—Under Ken-
tucky Statutes, section 1113, providing that "upon granting
a change of venue in a criminal case the judge of the court
shall direct that the defendant be delivered to the jailer of
the county where the trial is to be had," and Ib., sec. 2238, pro-
viding "If in any county the jail is insecure, or there is danger
or probable danger, that a person confined therein * * * will

White v. Commonwealth.

be rescued therefrom by violence, the judge of the circuit court * * * shall by an order * * * direct that such person shall be transferred to the jail of the nearest county in which the jail is secure, and it shall be deemed that he shall be safely kept. In the absence of anything appearing in the record to the contrary, it must be presumed that the judge's action in the premises was based upon some of the grounds authorized by the statute.

3. Impeaching Witness—Incompetent Evidence—Harmless Error— Where in an attempt to impeach the character of a witness for the Commonwealth some statements were allowed to be made by witnesses on both sides as to the character of the witness for sobriety, paying his debts, attending church and Sunday-school, etc., while incompetent, was not prejudicial to appellant.

4. Excluded Evidence—Admonition to Jury—Presumptions—Where a statement was made to the jury by a sister of deceased,"That deceased had information that defendant and others were going to kill him," was immediately excluded from the consideration of the jury by the court, and they were told to disregard it, we have no right to presume that the defendant was prejudiced thereby.

5. Special Terms—Calling—Notice—Summoning Juries Therefor— A special term of the circuit court provided for in Kentucky Statutes, section 964, may be called either by the order of the court made during the last preceding regular term, or by notice signed by the judge and posted at the courthouse door for ten days before the special term is held, and grand and petit juries may be summoned for, and criminal and penal cases tried at, such special terms, nor do we think it material whether the juries for the special term were ordered to be summoned before or after the beginning of the special term.

6. It was not error for the court to permit an attorney other than the regular attorney for the Commonwealth to state to the jury the nature of the charge against the defendant.

LAFFERTY & KING for appellant White.

We submit:

1. Under sec. 1118, Ky. Stats., which provides that "no more than one charge of venue or application therefor shall be allowed to any person or the Commonwealth in the same case," where the Commonwealth made application for a change of venue, which was sustained by the court, naming the county, and which motion was afterwards withdrawn, the motion can not again be renewed and another county named.

2. When a change of venue was made to one county it was

error in the court to remove the accused to the jail of another county. The law requires the defendant to be removed to the jail of the county to which the prosecution has been removed.

3. The court erred in allowing the Commonwealth, in attempting to sustain the character of the chief prosecuting witness, to prove that he would pay his debts, would not get drunk, did not gamble, attended Sunday-school and sang in the choir, and then refused defendant the right to prove by the same witnesses the specific acts or bad conduct of said witness upon which they based their estimate of his immoral character and want of veracity.

4. It was error in the court to allow the Commonwealth to prove by a witness "that deceased had information that defendant White and others were going to kill him," although this evidence was subsequently excluded from the jury.

5. We further claim that there was great excitement over the killing of Marcum, who was a prominent citizen, and public sentiment ran high; the papers were full of exciting comment and the demand for the arrest, speedy trial and conviction of the accused was universal, and we think that it was error in the court to hurry the trial through with so little deliberation.

## AUTHORITIES CITED.

Ky. Stats., secs. 1112, 1113 and 1118; Montgomery v. Commonwealth, 17 Ky. Law Rep., 94.

A. F. BYRD for appellee.

## POINTS AND CITATION OF AUTHORITIES,

1. Special term was legal and properly called. (Ky. Stats., secs. 964 and 965; Taggart v. Commonwealth, 20 Ky. Law Rep., 493; Bales v. Commonwealth, 11 Ky. Law Rep., 297.)

2. The motion to transfer to Morgan county was no bar to another motion, and the transfer to Harrison county was legal. (Enc. of Plead. & Pr. [2d Ed.], vol. 4, 440; Manly v. State, 7 Md., 135; State v. Noland, 11 Mo., 473; People v. Zane, 105 Ill., 662; Newport v. Rowan, 4 Hager [Tenn.], 196; Goodno v. Oshkosh, 31 Wis., 127; Enc. of Plead. & Pr., vol. 4, p. 391; Eckles v. Kinney, 4 Iowa, 539; Ky. Stats., secs. 1110, 1111 and 1112.)

3. The court has authority to appoint special bailiff in the absence of the defendant. (Criminal Code, sec. 183; Allen v. Commonwealth, 86 Ky., 645; Kentucky Constitution, sec. 12; Temple v. Commonwealth, 14 Bush, 769; Meece v. Commonwealth, 78 Ky., 593; McClearman v. Commonwealth, 11 Ky. Law Rep., 304; Am. & Eng. Enc. Law [2d Ed.], vol. 6, 995; Epps v. State, 102 Ind., 539; Rothchild v. The State, 7 Texas App., 532.)

4. Case should not have been continued. (Kneebone v. Kneebone,

83 Cal., 647; Sexton v. Commonwealth, 6 Ky. Law Rep., 440; Mus-Grove v. Perkins, 9 Cal., 212; Barnes v. Barnes, 16 L. R. A., 660.)

5. It was not error for hired counsel to state the case for the Commonwealth.   (Roberts v. Commonwealth, 94 Ky., 49.)

6. Evidence of W. H. Blanton and Denny B. Goode was competent.   (Barnard v. The State, 25 Texas App., 196; Green v. The State, 17 Texas App., 395; Harrison v. The State, 20 Texas App., 387.)

OPINION BY JUDGE SETTLE—Affirming.

The appellant, Thomas White and Curtis Jett were jointly indicted in the Breathitt Circuit Court for the murder of J. B. Marcum.   After a mistrial in that court, a change of venue was applied for in behalf of the Commonwealth, and was granted by the court, and the case transferred to the Harrison Circuit Court.   A joint trial of the accused followed in the latter court, resulting in their conviction at the hands of the jury, and the fixing of the punishment of each of them at confinement in the penitentiary for life.   A new trial was refused by the lower court, and a reversal of the judgment of conviction as to the appellant, White, is now asked, the appeal as to Jett having been withdrawn by him since the record was filed in this court.

Numerous errors were assigned for a new trial, but we will only notice such of them as are relied on for a reversal.   It is insisted for appellant that the judge of the Breathitt Circuit Court improperly allowed the Commonwealth's attorney to make two applications for a change of venue in the case, and that it was error to grant the change as was done at the time of the making of what appellant claims was the second application.   It appears that at the same term of the Breathitt Circuit Court at which the indictment was returned, and before the trial in that court of Jett and appellant, the Commonwealth's attorney filed his affidavit, stating, in substance, that, in his opinion,

there existed such a state of lawlessness in Breathitt county that the officers whose duty it was to summon witnesses would be prevented thereby from doing so, and jurors selected to try the accused would be deterred from rendering an impartial verdict. Based upon this affidavit, he moved the court to transfer the case for trial to another county outside of the Twenty-Third Judicial District. To this motion the accused both objected, but the court announced that the motion would be sustained, and the venue of the prosecution changed to the county of Morgan; whereupon the Commonwealth's attorney, after consultation with his associates in the prosecution, asked to be allowed to withdraw the motion for a change of venue, which the court permitted to be done over the objection of the accused, and the order was not formally entered upon the record. After the trial of Jett and appellant in that court, in which the jury failed to agree on a verdict, the Commonwealth's attorney renewed his motion for a change of venue in the case, based upon an affidavit similar to the one filed by him on the first motion, and the court then entered an order changing the venue of trial from the Breathitt to the Harrison Circuit Court.

While it is true that section 1118, Ky. St. 1903, provides that "not more than one change of venue, or application therefor, shall be allowed to any person, or the Commonwealth, in the same case," it does not appear from the record that the judge of the court did in fact grant the change of venue first asked, by the Commonwealth's attorney, though he stated his purpose to do so, but before entering or directing the entering of an order to that effect the Commonwealth's attorney withdrew the application. This, we think, left the Commonwealth situated as if the application for a change of venue had not been made

and did not interfere with the right of the Common-
wealth's attorney to make the application which was
granted by the court following the mistrial, and this
application should, in our opinion, be regarded as the
only one made in the case. The statute, supra, must
be given a reasonable construction, in order to effect-
uate the purpose for which it was enacted, and to hold
that the motion which was withdrawn by permission
of the court before final action was such an applica-
tion for a change of venue as prevented the Com-
monwealth's attorney from renewing the motion at a
later time is to place too narrow a construction upon
the language used, and would tend to destroy its use-
fulness.

Upon the calling of the case for trial in the Harri-
son Circuit Court, Jett and appellant filed a special
demurrer to the jurisdiction of the court, which was
overruled. The demurrer raised the objection to
the right of the judge of the Breathitt Circuit Court
to change the venue of the case to the Harrison Cir-
cuit Court, and we have already disposed of that
question.

It is further insisted for appellant that the judge
of the Breathitt Circuit Court erred in requiring him
to be confined in the jail of Fayette county, instead
of the jail of Harrison county, to which county his case
was transferred; it being contended that this was
prejudicial, as he had the right to be in the county
where his trial was to take place that he might
properly prepare his case for trial. (Ky. Stats.,
1903, sec. 1113), provides that upon granting a change
of venue in a criminal case the judge of the court
shall direct that the defendant be delivered to the
jailer of the county where the trial is to be had. Sec.
2238 of the statute, supra, provides: "If in any
county of this Commonwealth there is no jail, or the

same is insecure, or there is danger, or probable danger, that any person confined therein  *  *  * will be rescued therefrom by violence, the judge of the circuit court  *  *  * shall by an order  *  *  * direct that such person shall be transferred to the jail of the nearest county in which the jail is secure, and it shall be deemed that he can be safely kept.''  *  *  * While the order of the judge of the Breathitt Circuit Court does not set out his reasons for ordering appellant to be confined in the jail of Fayette county, and he was not required by the statute to state his reasons therein, it must be presumed, in the absence of anything appearing in the record to the contrary, that his action in the premises was based upon some one of the grounds authorized by the statute. Besides, it does not in fact appear that appellant was prejudiced by his confinement in the Fayette county jail, as he was not thereby prevented from conferring with his counsel or preparing for trial. Upon the contrary, he seems to have secured the attendance at the trial of every witness whose testimony was desired by him, except the witness Noble, and he was allowed to read as the deposition of Noble his own affidavit containing all the facts to which he claimed Noble would testify if present.

It is contended by appellant that incompetent evidence was admitted by the trial court to his prejudice; that is, that certain witnesses were permitted to testify in support of the reputation of B. J. Ewen, the principal witness for the prosecution, that he did not get drunk, or gamble, and that he attended church and Sunday-school. We find from the record that appellant and Jett, through their counsel and witnesses, made a very determined and bitter attack upon the character of Ewen, and great indulgence was shown by the court to both the Commonwealth and defend-

ants in the examination and cross-examination of wit-
nesses as to his character, and the testimony com-
plained of was gotten to the jury in that way. It
seems to have commenced with a witness, who, having
testified that Ewen's moral character was bad, was
asked upon cross-examination by counsel for the Com-
monwealth what he understood to be the meaning of
the expression "good moral character," to which he
in reply said, in substance, that a man of good moral
character was one who pays his debts, remains sober,
attends church and Sunday-school; whereupon he was
asked if Ewen did not pay his debts, attend church,
etc. Some of the other witnesses were allowed to
be cross-questioned in the same way, but we do not
think this evidence was prejudicial to the appellant.

It is also complained that it was error to allow
Mrs. Johnson, a sister of J. B. Marcum and witness
for the prosecution, to testify "that deceased had in-
formation that Tom White and others were going to
kill him." It appears from the record that the wit-
ness testified in substance that on one occasion pre-
vious to the death of her brother she was at his home,
when, in her presence he was given the information
in question, and witness, upon being advised that men
armed with guns were then at a stone quarry near
her brother's house, went out to see who they were.
Upon arriving at the quarry she discovered there
four men with guns, and that appellant was one of the
four; that upon seeing her they left the quarry, and,
after lingering a while in sight of the house, went off.
In view of other testimony in the case relied on by the
Commonwealth to connect appellant with the as-
sassination of Marcum, we think the foregoing testi-
mony of Mrs. Johnson was competent, except what
was said to her brother in her presence by others
to the effect that "Tom White and others were going

to kill him.'' That was clearly incompetent, and for that reason it was immediately excluded from the consideration of the jury by the court, and they were told to disregard it. This was done in a way that the jury could not have misunderstood. We have no right to presume that appellant was prejudiced by the testimony in question. To do so we must assume that the jury willfully disregarded what was said to them by the court, and violated their sworn duty to try the appellant according to the evidence. (Pearce v. Commonwealth, 8 S. W., 893, 10 Ky. Law Rep., 178; Tully v. Commonwealth, 13 Bush, 142; Allen, &c. v. Commonwealth, 82 S. W., 589, 26 Ky. Law Rep., 807.)

It is contended by appellant that the judge of the Harrison Circuit Court was without authority to call a special term of court for the trial of criminal and penal cases, except by an order of court entered at a regular term, and that there was no order of court calling the special term for the trial of this case, but only a notice thereof, signed by the judge, and posted on the court-house door in vacation; and further, that no emergency existed for, or required the holding of, the special term. Section 964, Kentucky Statutes, provides: ''In each county of said districts, except counties having continuous session, there shall be held each year the number of terms of the circuit court provided by law, and the term in any district may be extended if the business requires so that it does not interfere with any other term in the district; and whenever it is neces sary to transact the business a special term may be called in any county, either by an order entered of record at the last preceding regular term in the county, or by notice signed by the judge and posted at the courthouse door of the county for ten days before the special term is held. The order or notice shall

specify the day when the special term is to commence, and shall give the style of each case to be tried, or in which any motion, order or judgment may be made or entered at the special term, and no other case shall be tried, or motion, order or judgment entered therein unless by agreement of parties. Grand and petit juries shall be summoned and criminal and penal cases shall be heard at but three terms in each year in any county, to be fixed by order of court, unless in an emergency the court may otherwise direct; and grand or petit juries may be summoned for any special term by direction of the judge.''

It will be observed that the special term provided for in the section, supra, may be called, either by the order of the court, entered during the last preceding regular term or by notice signed by the judge and posted at the courthouse door of the county, for ten days before the special term is held; and, further, that grand and petit juries may be summoned for, and criminal and penal cases tried, at such special term. Section 2244 provides for the summoning of grand and petit juries, or either, for such special terms. Manifestly the calling of the special term by the judge of the Harrison Circuit Court in vacation, by the notice signed and posted as required by the statute, was as valid as if it had been called by an order of the court entered at a regular term. Nor do we think it material whether the jury for the special term were ordered to be summoned before or after the beginning of the special term. Section 2244 provides that if at any special term of a circuit court grand and petit juries, or either, will be required, the judge of the circuit court may, not more than ten days, nor less than five days, before the special term is to begin, direct the clerk of the court to immediately open the list made and delivered to him at the last regular term

of the court, and to deliver a copy thereof to the sheriff, who shall summon the jury as required by law. The judge may, therefore, before the beginning of the special term direct that a jury be summoned therefor, but the statute authorizing him to do so is not mandatory, and there seems to be nothing in its language that precludes him from entering, after the beginning of the special term, the order directing the summoning of the jury either grand or petit, or both.

Considering the fact that the case at bar involves the charge of murder against two persons, who might have been expected to demand separate trials, either of which, in view of the great number of witnesses, would be tedious and expensive, it was but natural that the judge of the Harrison Circuit Court, upon being advised of the transfer of the case to that court from a district other than his own, should have thought it necessary to call a special term in order to give the accused a speedy trial, and at the same time prevent any congestion of the docket during the regular terms of his court. Obviously the circumstances presented such an emergency as under the provisions of the statute, supra, justified the calling of the special term. This court has repeatedly upheld judgments of conviction in criminal cases secured at special terms of the circuit courts called as in the case at bar. And in Bales v. Commonwealth, 11 Ky. Law Rep., 297, it was held "that the accused having been properly tried and condemned, it is immaterial whether the order calling a special term at which he was tried was signed by the judge."

In the absence of competent evidence to the contrary, every presumption will be indulged as to the regularity and validity of the order of the trial court, and we have been unable to find in this record anything that conduces to show that there was error in

the calling or holding of the special term at which appellant was tried and convicted.  It is further insisted for appellant that the trial court erred in allowing counsel employed in the prosecution to make the opening statement of the case to the jury, instead of requiring that duty to be performed by the Commonwealth's attorney.

In Roberts v. Commonwealth, 94 Ky., 449, it was held that "it was not error to permit an attorney, other than the regular attorney for the Commonwealth, to state to the jury the nature of the charge against the defendant."

Finally, it is urged that appellant's motion for a peremptory instruction directing the jury to find him not guilty should have been sustained.  It would unnecessarily lengthen this opinion to enter upon a detailed statement of the facts relied on by the Commonwealth to show appellant's guilty participation in the murder of Marcum.  Suffice it to say that while the evidence showed that Curtis Jett fired the fatal shot which deprived Marcum of his life, much of it also conduced to prove that appellant was an aider and an abettor in the crime, the perpetration of which was unaccompanied with a single extenuating circumstance.

The victim was shot in the back without warning of his impending fate or knowledge of the presence of his assassin.  As there was some evidence to go to the jury of appellant's participation in the crime, a peremptory instruction was unauthorized, and the giving of it would have been error.

The instructions properly presented all the law of the case to the jury, and as, upon the whole record, appellant seems to have had a fair trial, the judgment is affirmed.