CASE 25.—PROSECUTION AGAINST WILLIAM CARTER FOR MURDER.—January 8.

## Carter v. Commonwealth

Appeal from Jefferson Circuit Court; Criminal Branch.

W. ALLEN KINNEY, Special Judge.

Defendant convicted and appeals—Affirmed.

1. Homicide—Review—Conflicting Evidence.—The verdict of the jury on conflicting evidence as to the cause and circumstances of a homicide is conclusive on review.

2. Criminal Law—Appeal—Objections Below—Sufficiency—Separation of Jury.—Under Criminal Code Practice, section 281, providing that decisions on motion for a new trial shall not be subject to exception, a complaint that the jurors in the trial of a criminal case were allowed to separate must be made to the court during the trial, and is too late to be available on appeal if first made on the motion for a new trial.

3. Deadly Weapon—Question for Jury.—On a trial for murder, it is proper to submit to the jury the question whether the iron pipe with which defendant killed deceased was a deadly weapon.

4. Criminal Law—Applause During Trial—Failure to Caution Jury.—The failure of the court to instruct the jury to disregard the applause from persons in the audience during the trial will not be considered as error, where no complaint of

such applause was made, and the court was not asked to give such an instruction.

5. Homicide—Remarks of Counsel—Harmless Error.—In a trial for murder, a witness being unable to identify the weapon exhibited to him as the one used by defendant, counsel for the prosecution remarked that: "If witness will not swear this is the iron pipe, we will." Held, that the remark and the failure of the court to rebuke counsel for making it were not reversible error; there being other evidence fully identifying the instrument.

6. Trial—Correcting Instructions.—It is not error to interline a word in the instructions after the conclusion of the argument to the jury, where the word was necessary to properly correct the instruction, and the correction was called to the attention of the jury, and also to the attention of counsel who neither objected thereto nor requested an opportunity to further argue the case.

7. Same—Evidence—Competency—Allowing the Widow of Deceased to testify for the prosecution, where her testimony had no reference to any communications received from deceased or the marital relation, though she was an unnecessary witness and her testimony immaterial.

DELOS B. ROGERS, H. W. ROBINSON and SAMUEL W. LECH for appellant.

JAS. BREATHITT, Attorney General, and TOM B. McGREGOR, Assistant Attorney General, for the Commonwealth.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE— Affirming.

The appellant, William Carter, was indicted in the court below for the crime of willful murder. The victim was Joseph Walker, a resident of the city of Louisville, and the place of the homicide the manufacturing establishment of the Mengel Box Company. Shortly after the return of the indictment appellant was tried and convicted, the verdict of the jury fixing his punishment at death; but he was granted a new trial by the circuit court. The second trial also

resulted in a verdict of guilty and the death penalty. Thereupon appellant again asked a new trial, which was refused, following which judgment was entered and sentence passed upon him in conformity to the verdict, and from that judgment he has appealed.

It appears from the evidence found in the record that appellant and deceased were both in the employ of the Mengel Box Company, it being the duty of the former, with the assistance of a fellow servant named Tyler, to run a band saw upon which lumber unloaded from a car only a few feet distant was sawed into such lengths as were suitable for use in the box manufactory, and that of deceased to inspect and enter in a book furnished him for the purpose each plank or piece of lumber unloaded from the car and placed on the table containing the band saw. According to the testimony of Tyler, appellant's helper, and one of two other men engaged in unloading the car, deceased was killed by a blow on the side of the head inflicted by appellant with a piece of iron pipe several feet in length when deceased had his back turned or partly turned toward him, and was not expecting the attack; that at the time he received the blow deceased was standing near the band saw table, with a rule hanging upon his left arm and a book in his left hand, in which he was making entries with a lead pencil held in his right hand. The other witness in the car did not see the blow inflicted, but saw deceased immediately before and when he fell to the floor, and testified that, when he last saw him before the assault, deceased had his back toward appellant, and was making entries in the book. Tyler also testified that just before the assault upon deceased he told appellant and Tyler to "pick up the lumber" in front of the table or to "be faster in

picking it up," to which appellant replied, "Yor are in a hell of a hurry;" that deceased then said he "meant no harm," whereupon appellant turned around and picked up the iron pipe, which was leaning against the wall nearby, and raising it with both hands, again turned toward and behind deceased, and struck him with it on the side of the head; that, upon receiving the blow, the latter fell to the floor senseless, and did not regain consciousness before his death, which occurred on the morning of the following day; and that appellant, after striking deceased, took his coat and left.

The conversation between appellant and deceased was heard only by Tyler. The two witnesses in the car, though but a few feet away, were unable to hear the conversation on account of the noise made by the running of the saw. They testified, however, that they saw appellant and deceased in a conversation immediately before the assault. The testimony of the two commonwealth's witnesses who saw appellant strike deceased with the iron pipe, who said that the blow was inflicted when deceased had his back toward appellant, was in some measure corroborated by Dr. Kelly, who testified that the autopsy disclosed that the wound was inflicted by some one standing behind or partly behind deceased. The iron pipe with which deceased was killed and the book held in his hand at the time were both introduced in evidence and fully identified.

The appellant testified in his own behalf, and, while admitting that he inflicted the blow with the iron pipe which deprived deceased of his life, claimed to have done so in his necessary self-defense. His version of the homicide was that about 12 o'clock of the day of the killing he had in his hand a silver half dollar

which he was tossing up, and that deceased in passing him grabbed it, and walked off, saying he would "blow it in for drinks;" that, soon after returning from his luncheon to the band saw to resume work, deceased came up and was requested by appellant to return his half dollar, which deceased refused to do, and immediately slapped appellant in the face, and then caught him by the collar, whereupon, believing his life in danger at the hands of deceased, he (appellant) turned and grabbed the iron pipe, and, jerking loose from deceased, struck him with it thereby causing his death, without intending to kill him.

It will at once be seen that appellant's story was wholly at variance with that of the Commonwealth's witnesses, and likewise without corroboration from any source. Indeed, not only was this so, but in addition appellant at the time of his arrest made to Officer Fow a different statement as to the cause of his alleged difficulty with deceased and the manner of the latter's alleged attack upon him. His statement to the officer, as testified by the latter, was that he gave deceased the half dollar to buy him (appellant) a quarter's worth of whisky, and that upon his and deceased's return to their place of work after luncheon the latter gave him no whisky and refused to return his money, and then struck him with his fist and advanced upon him with a knife, and that he (appellant) then picked up the iron pipe, and struck deceased to prevent him from cutting him with the knife. It was shown by McMahon, another employe of the Mengel Box Company, that deceased was with him and could not have been with or near appellant at the time the latter said he took his half dollar. It was not possible for the jury to reconcile the testimony of appellant with that of the witnesses

for the Commonwealth.  He or they swore falsely, and as there was no attempt to impeach them, and they had no interest to subserve, and their version of the homicide was consistent and supported by many circumstances connected with and surrounding it, no reason is perceived why the jury should not have accepted their testimony in preference to that of appellant.  At any rate, this court is concluded by the verdict, as there was ample evidence to sustain it.

Appellant complains that the deputy sheriff in charge of the jury permitted them to separate during the trial.  The affidavits with respect to that matter, found in the record, do not sufficiently sustain appellant's complaint, nor does the record show that the attention of the court was called to the alleged separation of the jury when it occurred, although then known to appellant's counsel; or that it was brought to the attention of the court at any time during the progress of the trial.  On the contrary, it is disclosed by the record that this complaint was not presented to the court until appellant filed his motion and grounds for a new trial.  For this reason we cannot consider the complaint; the right to do so being expressly denied by section 281, Cr. Code Prac., which this court has repeatedly declared to be mandatory.  Howard v. Commonwealth, 118 Ky. 1, 80 S. W. 211, 81 S. W. 704, 25 Ky. Law Rep. 2213.

Appellant also insists that the court erred in submitting to the jury by an instruction the question of whether the iron pipe with which deceased was killed was a deadly weapon.  This was not error.  The instrument in question was not per se of such a character as to enable the court to assume that it was a deadly weapon.  Therefore the question was properly

submitted to the jury by the instruction on that point, which was copied from one expressly approved by this court in the case of Cosby v. Commonwealth, 115 Ky. 221, 72 S. W. 1089, 24 Ky. Law Rep. 2050.

Appellant makes the further complaint that the trial court erred in permitting the jury to retire after the argument of the case without having instructed them to disregard the applause from certain persons in the audience which he claims was indulged in during the progress of the trial. We have carefully examined the record, but find no evidence of applause; nor does the record show that any complaint was made to the court of such applause, or that the court was asked to instruct or admonish the jury with reference thereto. The complaint, therefore, is one which we are not at liberty to consider.

It is further complained by appellant that the assistant Commonwealth's attorney was guilty of misconduct in the progress of the trial with respect to which the court refused to rebuke him or to admonish the jury. The alleged misconduct occurred during the examination of a witness with reference to the identification of the iron pipe with which the appellant struck the blow that caused the death of the decedent. The witness seemed to be doubtful of the identity of the iron pipe when it was exhibited to him. Whereupon the assistant Commonwealth's attorney remarked, "If witness will not swear this is the iron pipe, we will," doubtless meaning thereby that he had other witnesses by whom its identity would be fully established; and its identity was completely established later by other witnesses introduced by the Commonwealth. It is true the remark of the assistant Commonwealth's attorney was objected to, and that the court did not rebuke that officer

for what he said; but the court did remark in that connection that what the witness had said with respect to the identification of the iron pipe was not sufficient, and that it would be excluded unless the attorney for the Commonwealth should introduce other proof to identify the iron pipe. While it would have been better for the assistant Commonwealth's attorney to have omitted the statement objected to, we are unable to see that it could have been, or was, prejudicial to appellant.

It is also insisted for appellant that the court erred in interlining in the last instruction, after the conclusion of the argument to the jury, the word "No." This was not error. The word added to the instruction was indispensably necessary; indeed, the instruction would have been misleading and prejudicial without it. The court at the time of making the interlineation called the attention of all the counsel and of the jury to it. No objection was made by appellant's counsel to the interlineation, and no further argument was required to explain the instruction to the jury after the addition of the word mentioned, nor did counsel for appellant request the court to be permitted to further argue the case to the jury, after the change in the instruction was made. In brief, the change in the instruction was entirely proper, and a failure to make it would have been error. Turner v. Commonwealth, 80 S. W. 460, 25 Ky. Law Rep. 2161; Kennedy v. Commonwealth, 100 S. W. 242, 30 Ky. Law Rep. 1066; Sears v. L. & N. R. R. Co., 56 S. W. 725, 22 Ky. Law Rep. 152; Paducah Traction Co. v. Sine, 111 S. W. 356, 33 Ky. Law Rep. 792.

Appellant's final complaint seems to be that the court erred in allowing Mrs. Walker, widow of the deceased, to testify in behalf of the Commonwealth.

It appears from the testimony of Mrs. Walker that she was an unnecessary witness; but she was, nevertheless, a competent one. Her testimony had no reference to any communication or fact which she had received from her husband, or that arose out of the marital relation; and therefore what she said was not incompetent, though immaterial. We cannot see that the appellant could in any way have been prejudiced by it.

Although no objection is made to the instructions, except the one on the question of whether the iron pipe was or not a deadly weapon, we have nevertheless carefully read them. They are in the usual form, and contain the whole law as it should have been given to the jury. While the penalty inflicted upon appellant by the jury was the severest known to the law, we must permit it to stand, as our scrutiny of the record has disclosed no error by which it can be said any substantial right of the defendant was prejudiced by the rulings of the court.

Wherefore the judgment is affirmed.