## Combs v. Commonwealth.

(Decided March 24, 1933.)

C. A. NOBLE for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant, Marshall Combs, was indicted by the Perry county grand jury, charged with the willful murder of Willie Eversole.

Upon his trial at the February, 1932, term of the Perry circuit court, he was found guilty of voluntary manslaughter, and sentenced to confinement in the state penitentiary for ten years.

This unfortunate tragedy and triple killing, presented by the record before us, is in its tragic coloring almost like the storied and dramatic family feuds, staged between the hostile Montagues and Capulets, with their costly death toll, exacted as grievous penalty for their baleful and bloody clashes.

The actors and victims alike, in this sanguinary mountain drama, were for the most part closely bound by ties of domestic family relation and kinship.

The appellant, Marshall Combs, was a brother-in-law of the deceased, Willie Eversole, who had married his sister, Nora Combs.

The aged and boastful "bad man," Ira Combs, was the father of the appellant and Nora Combs, and father-in-law of the deceased.

The widow, Jane Combs, a vicarious sacrifice in this unfortunate melee and running amuck of these inter-family belligerents, was a sister of the deceased, Willie Eversole, and she and her little daughters lived as members of his mountain household, together with his wife, Nora, and her father, Ira Combs.

The appellant and deceased were also cousins, and the witness, Jesse Miller, implicated in this general fight pictured by the evidence, was also a kinsman of the deceased.

The scene of this annihilating conflict was in Perry county at the home of the deceased, situated at the mouth of Clear fork and Grapevine creek.

The appellant, Marshall Combs, is shown to have been at this time a deputy sheriff of Perry county.

On the morning of this eventful day, November 19, 1931, the deceased, Willie Eversole, had left his home to go up Grapevine, to the Blue Diamond coal camp, upon a business trip. Later, while returning home, he had fallen into the company of Jesse Miller and John Hensley, who, both astride Miller's nag, rode back with him to his home.

It appears that the deceased had, while on this trip, secured a generous supply of home brew, in which he and his two companions frequently indulged upon their homeward way, making one of their stops by a roadside schoolhouse, when its pupils were being dismissed, and where the deceased and his drinking companions were seen by his little niece, Leo Combs, and her schoolmates, who, upon reaching home, reported to her mother, Jane Combs, this fact, with other descriptive account of them and their conduct there, with the further statement that they had better get her Uncle Willie away from these men or they would kill him.

A short while after this, the deceased, together with Miller and Hensley, arrived at his home by a roundabout route and went to the barn.

Nora Combs Eversole, the deceased's wife, having seen their detoured approach and entrance into the barn and having heard the disturbing report given just before by little Leo, as to her apprehension for her Uncle Willie, at once left the house and went to the barn, where she ordered Miller and Hensley to leave.

Her testimony is not clear as to just what was the condition of things she found there at the barn, or as to what she found these drinking companions doing, but states that her husband, Willie, then drew his pistol and fired four shots in the barn, after which Miller left, saying that he didn't want to have any trouble; that Willie then reloaded his pistol, took her by the shoulder and said, "You need not think I am afraid of your G—— d—— brother either," and, slinging her back into the barn, started forth; that she soon followed him, when the first thing she saw was the meeting of her husband and dad, Ira Combs, who, his gun in hand, called, "Bill, drop that gun," when Willie dropped

his hand and pistol, and she hollered, "Daddy, he has. it down," but before she could reach her father, Jane had grabbed at his gun, drawn on her brother, when he shot her; that, when Willie saw his sister shot, he grabbed her by the hair and slung her into the creek on a. rock pile and shot three times at her dad. She testifies. that she was dazed by her fall upon the rocks and did. not see the further stages of this family fight then. going on, but upon regaining consciousness, after the war clouds had cleared, she found her husband, Willie,. lying across the branch, dead, and heard her father,. Ira Combs, calling to her brother, "Turn me over, Marshall, I am dying," and saw, too, her sister-in-law, Jane. Combs, there lying close by him, dead.

The appellant, Marshall Combs, states that he had. started up Grapevine creek to serve some warrants, and in passing had stopped by his sister's and father's. home just a few minutes before his brother-in-law,. Willie, and his friends, returned and went to the barn; that he did not see them come in, but had heard Leo. tell her mother, Jane Combs, of having just seen Willie and his companions while on her way home from school,. and that they had better get him away from them or they would kill him. Just a few minutes after this,. hearing the four shots fired at the barn, Ira Combs and. the appellant, Marshall Combs, each holding in their hands a .45 calibre pistol, started from the house towards the barn, followed by Jane Combs, when the appellant states he saw Jesse Miller come out of the barn and get off his horse and his brother-in-law, Willie Eversole, come out of the barn, running with his. pistol in his hands, when his father said something to Willie and Willie said, "I am the worst G—— d—— man you ever seen. You Combses ain't nothing," and looking up and seeing appellant also coming, he told. him to get on down the creek and that he would kill. him if he didn't go; that, hearing this, his father, Ira. Combs, then drew his pistol on Willie and said, "You ain't seen no bad man," and about the same time Jesse Miller "stepped in" with his pistol in his hand, when appellant said, "Willie Eversole, you are under arrest. Give me that pistol and let's go to the house"; that. about that time Jane grabbed his father's pistol and Nora jumped in front of Willie, when Willie grabbed her by the hair and slung her down into a rock pile and Dad's pistol went off and shot Jane, and Willie.

Eversole fired two shots at his father and two shots at him, when his father fell on the ground; that Jesse Miller fired three shots, either at him, the appellant, or Willie Eversole; that appellant thought he heard his father, Ira Combs, again fire his gun after the shot that killed Jane Combs, but didn't know, as he was dodging Willie Eversole, who was shooting at him at that time; that, as soon as the shooting was over, his father called, "Marshall, come to me. I am dying," when he ran over and took his pistol, in which there were five empty shells; and that he looked around and saw Willie lying over there dead, and Nora, his sister, came up and said, "Go to Shade Davidson's and get the car and take these people to the hospital," as his father and Jane were still then living, but Willie Eversole was dead.

Further, he testifies:

"I fired at Willie Eversole because he had shot my father and shot at me two times and I thought my sister was dead, he had slung her over in the creek and he was firing at me, I thought he was going to kill me."

He denied that he was drunk or had been drinking at the time, or that, as he went for the car to carry his father to the hospital, he rode his horse at a furious pace, beating it with his pistol, or was cursing or carrying his pistol in his hand, as testified by some of the commonwealth's witnesses.

On the other hand, the commonwealth's evidence was, that as the deceased left the barn, after having there fired the four shots, he had but one load left in his pistol and had gone but a short distance over the creek, when he was met by his father-in-law, old man Ira Combs and son, the appellant, Marshall Combs, approaching him with pistols in their hands, when Ira drew his .45 on Willie and told him he was going to kill him; that Jane Combs, Willie's sister, who followed Marshall and Ira Combs, seeing her brother's danger, said, "Oh Lord how (have) mercy, Ira, don't hurt Willie," and knocked his pistol down, causing it to fire into the ground, when Ira grabbed Jane by the arm and said, "I may as well get rid of you," and shot Jane Combs and then whirled and shot Willie, who in turn shot him. Again, its witness, Jesse Miller, testifies

that after Ira shot Jane, he then saw Marshall Combs coming upon Willie, who was retreating and coming towards him, the witness, telling and begging him not to let Ira Combs kill him, when Ira fired three shots at Willie, who then faced back towards them, as Marshall was standing nearby with a big gun sighted on Willie and who then shot him in the chest and killed him; that Willie was not at that time trying to do anything to anybody, but that when fatally shot by Marshall he fell, and, as he fell, he drew and fired his pistol at Ira Combs, hitting and killing him. He states that Willie did not have his pistol on Marshall Combs when Marshall shot and killed him.

Witness, when asked what he did after Willie Eversole fell, answered, "I went to the upper end of the barn to see what had become of Marshall. I was afraid he was going to kill me too."

Other witnesses testified for the commonwealth substantially to the same effect that at the time when appellant shot and killed the deceased, Willie Eversole, he was either seeking safety in flight from the scene of battle when being shot at either by old man Combs, who, it appears, emptied his gun during his participation in the strife, or after being chased by appellant, who shot at the back of the deceased as he ran, or at a time when he had drawn near to his supposed friend, Jesse Miller, when he was not threatening or attempting to carry on the fight with any one, but was entreating Miller not to let Ira kill him.

The appellant too assigns as his justification for killing the deceased not his resistance to arrest, but he testifies:

"I fired at Willie Eversole because he had shot my father and shot at me two times and I thought my sister was dead, he had slung her over in the creek and he was firing at me, I thought he was going to kill me."

Having been brought to trial, charging him with the murder of his brother-in-law, upon his trial he was convicted of voluntary manslaughter and sentenced to ten years in the penitentiary, and from that judgment he has prosecuted this appeal, seeking a reversal on the numerous grounds assigned in his motion and grounds for a new trial, but, by counsel, in his brief

states he would not argue all the assignments of alleged error set out in his motion for a new trial but only the two grounds therein recited, which he insists are material, and which, here urged by him for reversal, are: (1) That the court erred to the prejudice of the appellant's substantial rights in the admission of incompetent and prejudicial evidence by the commonwealth; and (2) that the trial court erred in his instruction to the jury, in refusing a peremptory instruction, and in the instructions given upon the trial.

Considering and disposing of these in the order named, the appellant first insists that the court erred to his prejudice in admitting, over his objections, the following testimony of Jesse Miller, a witness of the commonwealth:

"We were in the barn there, me and Willie Eversole and John Hensley, and Nora came up to the barn and ordered me and John Hensley out of the barn. I told her alright we would go and John Hensley and I went out of the barn. Nora reached out and took Willie Eversole by the arm and shoved him toward the barn door and told him— (The defendant objects; the court overrules; the defendant excepts.)

"Nora told him to get to the house. And Willie Eversole told her to go back to the house where women belong. Then Nora shoved him again and said, 'Get out of here they are going to kill you.' (The defendant objects, the court overrules; the defendant excepts.)"

Appellant contends that this statement of Nora Eversole, "Get out of here they are going to kill you," was made by his sister at a time when he was not present, and that the statement could only have meant that her father and the appellant were going to kill him, and that, such being the nature of her statement and being made out of the hearing of the accused, it was highly prejudicial, and in support of this contention cites several cases, wherein is announced the general rule that declarations made by third persons not shown to be acting in concert with the defendant or not in his presence are incompetent and inadmissible. Turk v. Commonwealth, 239 Ky. 55, 38 S. W. (2d) 937; Means v. Commonwealth, 238 Ky. 366, 38 S. W. (2d) 193;

Pace v. Commonwealth, 170 Ky. 560, 186 S. W. 142; White v. Commonwealth, 120 Ky. 178, 85 S. W. 753, 27 Ky. Law Rep. 561.

We will not enter upon any elaborate discussion of this contention, for the reason that, while conceding such to be the rule, it is not deemed here applicable by us, for the reason that this testimony objected to by appellant could clearly not have been understood by the jury to have related to the appellant or meant to convey the information by the wife to the deceased that her father, Ira Combs, and brother, the appellant, were going to kill him, but clearly indicated that her apprehension as to harm befalling her husband, the deceased, was at the hands of Miller and Hensley, with whom he was then drinking, and was prompted by the report made by her little niece, Leo, as to the conduct of these three whom she had seen on the road by the schoolhouse, who told her mother that they must get her Uncle Willie away from these men, Miller and Hensley, or they would kill him. This evidence was before the jury also as given by the testimony of the appellant himself, and therefore it is clear that the jury understood to whom this statement, made to her husband, related, and could not, for such reason, have been prejudicial to the appellant as constituting information given the deceased that he, the appellant, was going to kill the deceased.

Appellant also objects to the further testimony of the witness Miller:

"Q. What did Ira Combs say he was going to do to Willie Eversole? (The defendant objects; the court overrules; the defendant excepts.) A. Ira Combs said he was going to kill Willie."

We are of the opinion that this contention is also without merit, for the reason that this statement was made by the witness as to what was said by the parties at the time they were actually engaged in the fight, as being a part of their words exchanged at the time of the shooting had between them, and, as such, it was clearly a part of the res gestæ, and admissible as such. Deacon v. Commonwealth, 162 Ky. 188, 172 S. W. 121.

Further, the appellant objects to the testimony of the same witness as incompetent and prejudicial.

"Q. After Willie Eversole fell there did you look at him to see what he was doing or did you try to get away? A. I went to the upper end of the barn to see what had become of Marshall, I was afraid he was going to kill me too. (The defendant objects; the court overrules; the defendant excepts.)"

While this question, in so far as the witness was asked, and answered, where he went at this time, was unobjectionable, its further inquiry as to did he try to get away and witness' answer that he was afraid appellant was going to kill him too, even conceding that they were improper, were not prejudicially so, when considered in connection with all the evidence heard by the jury, the appellant having himself testified that the witness Miller, upon this occasion, shot twice at either him or the deceased, he didn't know which.

The appellant is not being here charged or tried with wanting to shoot or kill Miller, nor is it reasonable to suppose that the question and the answer of Miller thereto complained of could have influenced or had any prejudicial effect upon the jury in its consideration of the evidence heard as to appellant's guilt of the charge of feloniously shooting and killing his brother-in-law, for which one offense he was then being tried.

Appellant further complains of instruction No. 5 as given by the court, commonly termed the "officer instruction," and also the qualification made of this given instruction.

While, from our examination of this complained of instruction, we are of the opinion that the same was not proper, nor was the qualification attached thereto proper, yet appellant's own evidence shows that when he shot and killed Willie Eversole, his brother-in-law, he was not at the time acting as a deputy sheriff in attempting to arrest him for offenses committed in his presence, or that he shot him to overcome his resistance to arrest, but he expressly, when testifying, gives as his reason and justification for shooting the decedent that he shot Willie Eversole because he had shot his father, had shot at him, and he thought that he had killed his sister by throwing her into the creek upon the rocks, and that he was going to kill him.

Such being appellant's own statement of his reasons for the killing of his brother-in-law, and he not

having claimed that in so doing he was acting as an officer in trying to arrest him, but was at the time rather acting under the stronger urge of the time old law of "an eye for an eye and a tooth for a tooth," prompting him to destroy the man who he states he had just seen kill his father, as he then thought, his sister, and that he shot at him. From this it follows that even if the instruction complained of was erroneous, yet, inasmuch as the appellant, when shooting Eversole, was not claiming the protection of its justification, we conclude that the same was not prejudicial to nis substantial rights, and therefore could not constitute an error entitling him, upon such ground, to a reversal of the judgment. Criminal Code of Practice, secs. 340 and 353.

Appellant's final complaint is that the court erred in not granting him a peremptory instruction. However, this contention is clearly without merit, in view of the brief summary of the ample evidence heard by the jury tending to show his guilt of the crime charged.

"It is a recognized rule in this jurisdiction that if, on appeal, it be found that the evidence contained in the record, though conflicting, was sufficient to warrant the submission of the case to the jury, that fact will prevent the reversal of the judgment on the ground that the defendant's acquittal should have been directed by a peremptory instruction. It is only in the absence of any evidence tending to establish the guilt of the accused that the trial court will be authorized to grant a peremptory instruction directing his acquittal. In other words, the verdict of the jury on conflicting evidence, as to the cause or circumstances of a homicide, is, as to the question whether a peremptory instruction should have been given, conclusive on review." Pace v. Commonwealth, 170 Ky. 560, 186 S. W. 142, 145; Carter v. Commonwealth, 131 Ky. 240, 114 S. W. 1186; Lewis v. Commonwealth (Ky.) 96 S. W. 478, 29 Ky. Law Rep. 820; Thompkins v. Commonwealth, (Ky.) 90 S. W. 221, 28 Ky. Law Rep. 642.

While this tragedy, enacted under the conditions and circumstances as shown by the evidence, resulting in the death of three of the members of the Eversole household, and one of whom is shown to have been the innocent victim of the unrelenting rage and murderous fury of these unreasoning and violent men, and even

though it may be that the appellant is not justly to be condemned or found of equal guilt with them, we yet conclude that he is shown, upon a careful consideration of the whole record, to have had a fair trial as to his guilt of the offense charged against him, and we are therefore of the opinion that the judgment should be, and is, affirmed.

Whole court sitting.