## Middleton v. Commonwealth.

(Decided May 2, 1911.'

### Appeal from Bell Circuit Court.

1. Murder—Question as to Who Fired Fatal Shot—Evidence—Instruction—Appellant and two others were charged with murder. The defense of appellant was that he and his companions innocently fired into bushes as deceased was passing and that he turned and in warlike spirit fired upon them when they shot in self-defense. While the preponderance of the evidence was that another fired the fatal shot, there was evidence that the appellant

may have done so, and a witness testifying positively that appellant was running after and shooting at deceased, and that he was within range and distance, an instruction was not erroneous that directed the jury to find appellant guilty if they believed while in shooting as the witness described he killed deceased.

2. Absence of Chief Counsel—Motion for New Trial—While appellant's chief counsel was absent, he was defended by an able lawyer who defended him upon a former trial, and he agreed to go into trial at the time it was begun, if the case should be passed to this time so that certain absent witnesses might be present, which was done. There is nothing in the record which shows that the accused did not have a fair trial. His case was fairly presented, and no reason is given which would have justified the trial court in granting a new trial.

JAS. BREATHITT, Attorney General, THOS. B. McGREGOR, Assistant Attorney General for Commonwealth.

W. F. HALL for appellant.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

In October, 1907, Walter Middleton, Thomas Middleton and John Middleton were indicted in the Harlan Circuit Court for the murder of Harmon Scott. Upon a change of venue, asked for by the Commonwealth, the case was transferred to the Bell Circuit Court. A separate trial of Walter Middleton resulted in his conviction, the punishment being fixed at life imprisonment. Walter Middleton v. Commonwealth, 136 Ky., 354. Thomas Middleton was put upon his trial, and, after one or two mistrials, at the February term, 1911, of the Bell Circuit Court he was found guilty and his punishment fixed at life imprisonment.

From that judgment he prosecutes this appeal, relying upon two grounds for reversal: first, error of the trial court in refusing to pass his case to a later day in the term in order that his chief counsel might be present, and second, error of the court in instructing the jury.

The facts, as detailed by the witnesses, are as follows: Harmon Scott lived in Lee County, Virginia. On Saturday, September 14, 1907, he crossed over into Kentucky and attended a meeting that was being held on Martin's Fork. After service he procured a horse and went down Martin's Fork two or three miles to Bascom Saylor's still, carrying with him a pair of saddle bags,

and a 45 Colt's revolver. Earlier in the afternoon the three Middleton boys, Walter, Thomas and John, had gone down Martin's Fork to John Scott's store. John Scott was a brother of Harmon's. Each of the boys had a gun. While Harmon Scott was at Saylor's still house the Middleton boys passed back up the creek. The record does not show whether they saw him go to the still or not, although they could have seen him had they been looking. After Harmon bought his whiskey and took a drink he started back up the creek. When he had gone some three hundred yards from Saylor's house to a point about opposite Anthony Eli's house, several shots were fired. A few minutes later still other shots were heard fired further up the creek.

It is the theory of the Commonwealth that when Harmon Scott caught up with and passed the Middleton boys they, without cause, commenced shooting at him, that he at first returned the fire, and then attempted to get away. They ran after him, shooting as they ran, and finally killed him, the ball striking him in the back and ranging upward through the body.

As opposed to this theory the accused testified that, after Scott passed them in the road and had gone some distance beyond, they fired their guns innocently into some bushes on the side of the road, and that he in a warlike spirit turned his horse, rode back toward them, and fired several shots at them; that they only shot in self-defense. They account for the shot in deceased's back in this way, that his horse was rearing and plunging and, just as the shot struck him, the horse whirled, throwing his back towards the accused.

Under this evidence it was proper that the case should be submitted to the jury, and it was the duty of the court in the instructions to present every possible phase of the case as warranted by the facts developed. The decided preponderance of the evidence tends to show that Walter Middleton fired the fatal shot; but there is evidence tending to show that Thomas Middleton may have done so, for the witness Manervia Surgeoner testified positively that Thomas Middleton was running after and shooting at deceased, and that, when doing so, he was within shooting range and distance. Her testimony could not be ignored, and it is upon her testimony that the court based that part of instruction No. 1 in which he told the jury that if they believed, etc., that accused

shot and killed deceased under certain circumstances they should find him guilty. The instructions are unobjectionable, and the court did not err in embodying this idea in instruction No. 1. In fact, it would have been error for him to have failed to do so.

The serious complaint is that the court erred when the case was called for trial and it was ascertained that Judge Hall, chief counsel for the accused, was not present, in not passing the case to another day, or a reasonable time, in order that appellant might have his counsel there and have the benefit of his advice and assistance in his defense. The reasons for the court's refusal to grant this request are set out in writing in the record, and are as follows:

"Upon the calling of this case for trial on to-day the plaintiff elected to try the defendant Thomas Middleton first, and again announced ready and the defendant not ready and produced and filed his affidavit and moved the court to continue this cause or pass it until to-morrow morning, Friday the 11th day of this term, because of the absence of Judge W. F. Hall, who he states he had at all times relied on to represent him. An examination of the record discloses that this case has been pending in this and Harlan Circuit Court for more than three years, and that there has been two trials heretofore, one in Harlan, and one in Bell. This case was set for trial on Monday, the 7th day of this term, and was then called when the defendants in person and by E. N. Ingram, who then appeared attorney for them, announced not ready because of the absence of certain witnesses, and this case was then passed until to-day, Thursday, the 10th day of this term, so defendants might procure the attendance of their absent witnesses and having assured the court they would be ready to-day and would not ask a continuance or further delay, the case was then passed without requiring them to make a showing. Defendants now have their witnesses in court, but ask a continuance or that the case be passed because of the absence of their said attorney. To pass this case until to-morrow would make it impossible to try it at this term because the Judge to whom this case has been assigned for trial and who is now presiding cannot remain longer than the 12th day of the term because of the beginning of the regular term of the Laurel Cir-

cuit Court next Monday. Upon investigation the court learns that E. N. Ingram represented these defendants in a trial on one branch of this case at a former term and that the said Ingram is perfectly familiar with all the facts in this case, and this the defendants admit to be true. Besides this, the court knows that T. N. Ingram is an able lawyer, in fact, one of the ablest members of the Bell County Bar, and a man of influence and prominence, and there seems to be no sufficient reason to further delay this case. When this case was first called to-day the same was passed until one o'clock in order that the defendants might employ other or additional counsel if they desired, they having first made known to the court that they were able to do so and did not desire counsel appointed. There is no statement in the affidavits that defendants have paid W. F. Hall, to further represent them or that they are unable to employ other attorneys. The court is now advised that they have employed the said Ingram to represent them, and this is admitted by the defendants and the said Ingram. In view of these facts and the length of time this case has been pending and the known ability of the said Ingram, as a criminal lawyer and his admitted familiarity with the case, and that delay now means a continuance, this motion for continuance is now overruled, to which the defendants except.''

In passing upon the motion for a new trial the court entered the following order bearing upon this question:

''Came the defendant by attorney and filed his motion and grounds for a new trial herein, and the court after considering same and being advised is of opinion that the grounds for a new trial are merely formal, except the second, which is based on the court's overruling the affidavit for a continuance, and the defendant's request to pass the case for absent counsel. The court in overruling the affidavit, set out the reasons in the order overruling same and will not repeat them here; however, it is but fair to say that after the trial proceeded, and before the Commonwealth closed its evidence, the defendant's absent counsel, W. F. Hall, came in and represented the defendant in the trial and argued the case before the jury. After the said Hall came in, the Court suspended the trial, in order that the court stenographer could read such of plaintiff's testimony to said Hall as he desired, and before proceeding further and also per-

mitted the chief witness for the plaintiff, Minerva Serg-
ner, to be recalled and further cross-examined, which
was done by the said Hall and at his request.

"For the reasons above set out the motion and
grounds for a new trial are overruled, to which the de-
fendant excepted."

From these two court orders it is quite apparent that,
although one of appellant's counsel was not present at
the beginning of his trial, he was at all times represent-
ed by counsel who was familiar with the case and thor-
oughly competent and qualified to conduct his defense,
and that while the trial was in progress his other attorney
came into court, and, after his arrival, proceedings were
suspended until he had familiarized himself with the evi-
dence that had been produced, and was permitted, upon
examining same, to recall one of the chief witnesses for
the Commonwealth and further cross-examine her. There
is nothing in the record which shows that the accused did
not have an opportunity to fairly present his case, and no
reason is given which would have justified the trial court
in granting a new trial. A judgment should not be dis-
turbed because of irregularities or errors occurring dur-
ing the progress of the trial unless the court is of opinion
that these irregularities or errors worked a hardship or
were in some way prejudicial to the substantial rights of
the party complaining. The Constitutional guaranty
that the accused has a right to be heard, either in person
or by counsel, was in no wise abridged. This is a com-
panion case of Commonwealth v. Walter Middleton, and
the record shows that in the trial of that case the defend-
ant was represented by Judge Hall and Mr. Ingram.
The facts in that case are practically the same as in this
—necessarily so—and Mr. Ingram was familiar with the
theory upon which the Commonwealth was proceeding
and the defense relied upon by his client. There is not
even an intimation in the record or in the brief for ap-
pellant, that Mr. Ingram did not do for his client every-
thing that Mr. Hall himself could have done if present.
Hence, we fail to see where he is afforded ground of
complaint because the trial proceeded before Mr. Hall
had arrived. As was well said by the trial judge, more
than three years had passed since the crime with which
the accused stood charged was committed. The regular
judge was disqualified from sitting, thus necessitating
the appointment of a special judge. The term was draw-

ing to a close, and to have postponed the trial for even another day would have had the effect of continuing the case, thus necessitating at least four months additional delay. Under such circumstances the trial court was clearly justified in proceeding with the trial.

Upon the whole case we are satisfied that substantial justice has been done in that the accused had a fair and impartial trial, in which he was given every opportunity to and did fully present his case to the jury.

Judgment affirmed.