# Tucker et al. v. Commonwealth.

(Decided Oct. 9, 1934.)

T. O. JONES for appellants.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

Morton Tucker and Cecil Jarvis were convicted of the crime of unlawfully and knowingly receiving stolen property and were sentenced to a term of one year each in the penitentiary.

It is first insisted on this appeal that the trial court erred in overruling their motion for a peremptory instruction on the ground that there was no evidence tending to show that they knew the property found in their possession had been stolen.

The facts are these:

On or about December 12, 1933, Joe Lane broke into a freight car of the Illinois Central Railroad Company while it was located in the railroad yards at Central City and stole a large quantity of cigarettes. A day or two later he met Jarvis and asked him if he wanted to buy some cigarettes. The sale was not consummated at that time, but later Jarvis and Tucker drove in an

automobile to Lane's home and agreed to purchase three cases of cigarettes at $9 a case. Each case contained 50 cartons of 10 packages each, or 10,000 cigarettes, and was worth approximately $50. The cigarettes were concealed in a ditch some distance from Lane's home. Lane walked through a woodland to the place where the cigarettes were concealed, returned with them and delivered them to appellants, who sat in the automobile while Lane went to the place where the cigarettes were concealed and returned. They paid Lane $21, but failed to pay the balance due, and a few days later Lane went to Tucker's home and took back the cigarettes for which he had not been paid. Appellants traded most of the cigarettes for merchandise at a store in Central City; the cigarettes being valued at 90 cents a carton by the merchant who received them. When appellants were arrested they admitted purchasing the cigarettes, and delivered to the arresting officers all that remained in their possession. They testified that they did not know the cigarettes had been stolen, and Lane testified that when he sold and delivered the cigarettes to appellants he did not inform them that they had been stolen.

It is argued that there is no evidence tending to show such knowledge on their part, but there are a number of circumstances from which the jury might have reasonably inferred that they knew the cigarettes had been stolen. The evidence shows that appellants lived two or three miles from the home of Lane and that both of them knew Lane. They knew that Lane was not employed and was not engaged in the mercantile business. They knew that Lane did not have the cigarettes in his home, but they saw him walk through a woodland, where he evidently had them concealed, and return with them. They purchased them for approximately one-fifth of their market value, and this in itself should have been enough to arouse their suspicion. In the case of Duke v. Commonwealth, 255 Ky. 403, 74 S. W. (2d) 472, where the circumstances tending to show knowledge on the part of the accused were no stronger than those in the instant case, this court, in approving the trial court's refusal to sustain a motion for a peremptory instruction, said:

"The circumstances surrounding the sale to appellant, the very modest price which he gave for the goods, the hour at which the goods were sold, all indicate clearly that he knew the goods had been

stolen. Furthermore, appellant's possession of the stolen goods was itself, under the provisions of section 1199 of the Statutes, prima facie evidence of his guilt.''

Also see Terrell v. Commonwealth, 255 Ky. 480, — S. W. (2d) — , decided September 28, 1934. The evidence was sufficient to authorize a submission of the case to the jury on the issue of knowledge on the part of appellants that the property bought by them from Lane had been stolen and to sustain the verdict.

It is next insisted that the regular panel of the jury should have been discharged and that a new jury should have been drawn from the wheel to try appellants. It appears that one Albert Evitts had been tried on the day before appellants were tried for the crime of knowingly receiving stolen property and had been convicted and his punishment fixed at two years in the penitentiary. He had also purchased some of the stolen cigarettes from Joe Lane. It is argued that the entire panel of the jury heard all of the evidence, the instructions of the court and arguments of counsel in the Evitts case, and were, therefore, biased, and none of them should have been permitted to serve on the jury in this case. The record shows that ten from the regular panel qualified as jurors in appellants' case, and that two were selected from bystanders. Evitts did not purchase the cigarettes at the time or place Lane sold and delivered three cases of cigarettes to appellants, and for aught the record shows the evidence tending to show knowledge on the part of Evitts that the property purchased by him had been stolen may have been entirely different from the evidence tending to show such knowledge on the part of appellants. In the absence of a showing to the contrary, it must be assumed that the jurors were properly qualified.

It is finally insisted that the trial court erred in recalling the jury after the case had been submitted to them and changing one of the instructions. In instruction No. 1 the jury were told that if they found the defendants guilty to fix their punishment at imprisonment for not less than 2 nor more than 10 years. After the jury had retired the judge recalled them and corrected the instruction so as to fix the punishment at not less than 1 nor more than 5 years' imprisonment. Appellant cites and relies upon Roberts v. Commonwealth, 90

Ky. 654, 14 S. W. 832, 12 Ky. Law Rep. 681, and Wilhelm v. Commonwealth, 28 S. W. 783, 16 Ky. Law Rep. 428. In the Roberts Case a verdict had been returned, and while the jury was being polled it was discovered that one of the instructions was erroneous. The instruction was changed and the jury was required to return to the jury room for further deliberation. They returned a verdict fixing a lower punishment than was fixed in the first verdict. It was said, in substance, in the opinion that, having just agreed on the punishment that should be inflicted, the jury might have been reluctant in materially reducing the punishment in their second verdict. In the Wilhelm Case an additional instruction was given after the case had been argued by the attorney for the defendant and while he was absent, but whether this of itself was error was not decided, since the court held that the instruction was clearly erroneous.

In the instant case the jury had not agreed upon a verdict when one of the instructions was corrected. Appellant's attorney was given an opportunity to reargue the case, which he declined to do. The action of the court in correcting the instruction could not under the circumstances have prejudicially affected appellants' rights. Carter v. Commonwealth, 131 Ky. 240, 114 S. W .1186; Middleton v. Commonwealth, 136 Ky. 354, 124 S. W. 355.

The judgment is affirmed.