## Daugherty v. Commonwealth.

(Decided February 10, 1914.)

### Appeal from Boyle Circuit Court.

1. Homicide—Evidence—Submission to Jury.—Under an indictment for murder, there being proof authorizing the jury to conclude that the defendant shot the deceased who was a peacemaker because he was preventing him from shooting another with whom he was engaged in a difficulty, the court properly submitted to the jury the question of murder.

2. Homicide—When One May Kill Another to Rid Himself of Trespass.—A person may not kill another to rid himself of a trespass to his person, or prevent the taking of a pistol from him, unless he was then and there in danger of death or great bodily harm.

3. Homicide.—Life may not be taken by the defendant unless he has no other safe means of averting the impending danger.

4. Homicide — Instruction — Use of Words Without Felonious Malice.—The defendant was not prejudiced by an instruction which used the words "without felonious malice" instead of the words "without previous malice."

5. Trial—Exceptions.—The ruling of the court on a challenge for cause is not subject to exception.

6.  Homicide—Statement of Defendant May be Shown by Rebuttal—
    Admonition.—Statements made by the defendant as to how the
    homicide occurred inconsistent with his testimony on the trial
    may be shown in rebuttal, the court admonishing the jury that
    such evidence only goes to his credibility as a witness.

ROBERT HARDING for apellant.

JAMES GARNETT, Attorney General and CHARLES H. MORRIS,
Assistant Attorney General and OVERTON S. HOGAN, Assistant
Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

J. W. Daugherty was indicted in the Boyle Circuit
Court for the murder of James Anderson. On a trial of
the case he was found guilty as charged and his punish-
ment fixed at imprisonment in the penitentiary for life.
He appeals.

The first question made on the appeal is that the court
erred in giving any instruction on murder and that there
are no facts in the record from which the jury could rea-
sonably conclude that the defendant was guilty of mur-
der.

The killing occurred between nine and ten o'clock at
night on the pike leading into Danville from Lebanon.
While there is some variation in the testimony of the
witnesses for the Commonwealth, the sum of the testi-
mony for it is this: Daugherty and a man named Claw-
son had been out the pike and had drunk several bottles
of beer each; they both worked for the railroad company
and were on their way back to Danville. Daugherty as
they were going along back together claimed that Claw-
son owed him $3.00; they got into a dispute over it, Claw-
son struck Daugherty, they clinched and fell to the
ground, Clawson being on top. While they were disput-
ing Anderson and two other railroad men who knew
both Daugherty and Clawson well, came up behind them.
Anderson tried to stop the dispute over the $3.00, of-
fering to pay Daugherty $3.00 himself. Daugherty said
he didn't want Anderson's money, he wanted Clawson to
pay it. When Daugherty and Clawson were down in the
road clinched, Anderson came up with his party, and
some of them took Clawson off of Daugherty, and An-
derson took hold of Daugherty's hand. Clawson went
back to get his hat that had dropped on the ground

where the struggle began; as he did this, Anderson called out, "Look out boys he's got a pistol," at the same time asking one of his party to come and take the pistol from Daugherty. Before he could do so the pistol fired, and shortly after this two more shots were fired. Anderson and Daugherty then clinched and fell to the ground and when they were separated Anderson had received three pistol shot wounds from which he died. A man who was coming up the pike from Danville and was about thirty-five yards from them heard this just before the first shot was fired: "Look out. I don't want to have to shoot you." On the other hand, the defendant's testimony is that Clawson when he asked him for the $3.00, pulled out a quarter and handed it to him; that the quarter fell to the ground, and they both went down on the ground after it. While they were struggling on the ground, Anderson and his party came up. One of them pulled Clawson off and Anderson got hold of Daugherty and said, "Bill, you have got a pistol; give me that pistol;" that he said, "No, sir, I will not do it;" Anderson said, "Well you will give it to me;" and Daugherty said, "No, sir, I won't;" that Anderson then hit him over the eye, and was on top of him on the ground hitting him on the face and on the side of the head, and said, "Give me that pistol or I will beat your brains out;" that he then thought that Anderson was going to kill him and got his pistol out of his pocket and shot Anderson three times, while he was beating him there in the road. In rebuttal the Commonwealth showed that just after the killing Daugherty said to two persons that Anderson had taken his pistol away from him and shot himself with it. The version of the difficulty as given by Daugherty is not sustained by any of the witnesses who were present, or by the circumstances. Without elaborating the testimony, we are satisfied the jury concluded from all the evidence that Daugherty drew his pistol to shoot Clawson when the latter was pulled off him and that when Anderson intervened to keep him from shooting Clawson and would not let him do this, he turned the pistol on Anderson and killed him. We, therefore, conclude that the instruction of the court submitting the question of murder to the jury was proper and that the verdict of the jury is **not** palpably against the evidence.

The court gave the jury the usual instruction on self-defense. The defendant asked that this instruction be given:

"No. B. If you believe from the evidence that the decedent, Jim Anderson, assaulted the defendant, James Daugherty, by seizing or striking, or slamming him on the ground, then you are instructed that the defendant, Daugherty, had the right to use such force as seemed to him in the exercise of a reasonable judgment to be necessary to rid and free himself from such assaults and trespass upon his person, and if the said Daugherty shot and killed the deceased in order to do so, then he had a right to do so, and you will find him not guilty."

The court properly refused this instruction; for although Anderson assaulted Daugherty in his effort to keep him from killing Clawson, Daugherty had no right to kill Anderson to rid himself of the trespass to his person, or to kill Anderson to prevent Anderson from taking his pistol from him. Life may not be taken to prevent a trespass; it may only be taken to prevent the loss of life or the suffering of some great bodily harm.

Instructions C and D which the defendant asked on self-defense were practically embraced in the instruction which the court gave in so far as they were proper. These instructions both improperly omitted this qualification; "that the defendant had no other safe means of averting the real or to him apparent danger;" for one is allowed to take the life of another only as a last resort. The qualification of the instruction was peculiarly applicable here for the reason that the great weight of the evidence showed that Anderson appeared upon the scene as a peacemaker, and acted throughout in good faith to keep down the difficulty and prevent trouble.

In the instruction defining voluntary manslaughter these words are used: "without felonious malice." The usual expression in such instruction is "without previous malice," and this use is so universal as to suggest that the word "felonious" must be a clerical error for "previous." But however this may be, the court defined "felonious" as meaning "proceeding from an evil heart or purpose," and so the expression "without felonious malice" would mean "without malice proceeding from an evil heart or purpose;" that is, without express malice. This was more favorable to the accused than if the usual phase "without previous malice" had been used.

The action of the court in overruling the appellant's challenge for cause of one of the jurors is not subject to review in this court under section 281 of the Code.

The court admonished the jury that the testimony admitted in rebuttal to the effect that Daugherty had made out of court statements inconsistent with his testimony on the trial should only be considered by the jury to affect his credibility as a witness. The defendant cannot complain of this. On the whole case we see no error in the record to the prejudice of the defendant's substantial rights.

/ Judgment affirmed.