CASE 86—INDICTMENT—JANUARY 14.

# Adkins, &c., v. Commonwealth.

APPEAL FROM KNOX CIRCUIT COURT.

1. CHANGE OF VENUE.—Upon a motion by the Commonwealth for a change of venue in a criminal case, the Commonwealth's attorney having filed his statement showing the necessity for the removal, the court may then act on its own personal knowledge in selecting the county to which the removal shall be made, and is not bound by affidavits filed by the accused, objecting to a particular county.

2. CONTINUANCE.—The provision of the Criminal Code denying to the accused the right to a continuance because of the absence of material witnesses, where the Commonwealth will admit that the absent witnesses, if present, would testify to the facts stated in the affidavit for a continuance, does not apply unless the accused has been awarded the compulsory process of the law to obtain the attendance of his witnesses, and has been allowed a reasonable time and opportunity to enforce the process. Therefore, the code provision referred to does not violate that provision of the constitution guaranteeing to every

person accused of crime the compulsory process of the law to obtain the attendance of his witnesses.

3. SAME.—The facts recited in the opinion in this case show that the defendants did not have awarded to them the compulsory process of the law with reasonable time and opportunity to obtain the benefit of same, and, therefore, it was error to refuse a continuance, although the Commonwealth admitted that the absent witnesses would, if present, testify as stated in the affidavit for a continuance.

4. INDICTMENT AGAINST WITNESSES FOR PERJURY—FILING OF IN PRESENCE OF JURY.—This court does not view with approval the filing of indictments for perjury against defendants' witnesses on account of testimony given by them for defendants upon an application for bail, the indictments being filed in the presence of those summoned to serve as jurors on the trial of this case, and being based solely on the evidence of the witnesses for the prosecution. The filing of these indictments under these circumstances was not calculated to give to defendants in this case that fair and impartial trial contemplated by law.

5. EVIDENCE.—Upon a trial for murder, evidence tending to connect defendants with a faction adverse to deceased must be of a general nature only, and must not relate to the particulars of any transaction. And this rule the trial court seems to have kept in view, also properly warning the jury that the evidence admitted on this line could only be considered as supplying a possible motive for the commission of the offense charged in this case.

6. NECESSITY FOR STATEMENT TO JURY AS TO PURPOSE OF PARTICULAR EVIDENCE.—As the two defendants were tried together it was not necessary for the court all through the trial to be constantly warning the jury that this or that particular evidence was to be considered only against or in favor of one or the other of the defendants, as the jury may fairly be supposed to possess sufficient intelligence to distinguish and apply the evidence properly.

7. BAIL.—The court on entering upon the trial properly disregarded the order of the county judge previously made allowing bail, held the bond taken to be void and then ordered the defendants into actual custody. If the defendants desire to again give bail new proceedings for this purpose will be necessary before the proper officer.

8. CUSTODY OF ACCUSED PENDING TRIAL.—It was within the discretion of the court to order defendants into actual custody when the trial commenced.

9. BILL OF EXCEPTIONS.—A motion to strike from the record a bill

of exceptions filed in vacation pursuant to an order allowing sixty days in which to prepare and file a bill is overruled.

BRECKINRIDGE & SHELBY, B. B. GOLDEN AND C. BOWERS FOR APPELLANTS.

1. The Knox County Court was without jurisdiction, the order of the Perry Circuit Court transferring the case being void. (Ky. Stats., sec. 1110; Higgins v. Commonwealth, 94 Ky., 57.)

2. The refusal to continue a criminal case when the defendant is entitled to a continuance is sufficient cause for reversal. (Morgan v. Commonwealth, 14 Bush, 106; Salisbury v. Commonwealth, 79 Ky., 142; White v. Commonwealth, 80 Ky., 489; Petty v. Commonwealth, 12 Ky. Law Rep., 920; Bowlin v. Commonwealth, 94 Ky., 394; Vogt v. Commonwealth, 92 Ky., 71; Murphy v. Commonwealth, 92 Ky., 488; Hardesty v. Commonwealth, 88 Ky., 541.)

3. The amendment of May 15, 1886, to section 186 of the Criminal Code, is unconstitutional. (Pace v. Commonwealth, 89 Ky., 266; Constitution of Kentucky, sec. 11.)

But even if that amendment is valid the term at which appellants were tried was the first trial term within its meaning. (Hardesty v. Commonwealth, 88 Ky., 541.)

4. In admitting testimony as to other offenses the court should have admitted no more than was necessary to show motive, and should have clearly instructed the jury as to the purpose for which it was admitted. (People v. Sharp, 1 Am. St. Rep., 869; Pinchord v. State, 13 Texas, 478; Commander v. State, 60 Ala., 1; Martin v. Commonwealth, 93 Ky., 189.)

Defendants should also have been allowed to explain the prosecutions against them so as to put them in as favorable a light as possible. (Franklin v. Commonwealth, 92 Ky., 617.)

5. It was error to admit in rebuttal testimony that was admissible in chief. (Williams v. Commonwealth, 90 Ky., 596.)

6. The court erred in giving an instruction as to a conspiracy. (Shelby v. Commonwealth, 91 Ky., 571.)

7. The bail bond executed pursuant to the order of the county judge fixing bail was not a void bond. (Smith v. Commonwealth, 91 Ky., 589.)

But even if that bond was void it did not justify the circuit court in sending defendants to jail. They should have been allowed to give a new bond, and the refusal to allow them to do so is a reversible error. (White v. Commonwealth, 80 Ky., 480.)

8. It was improper to allow indictments for perjury against defendant's witnesses to be returned in the presence of the jury trying this case.

Anything that prevents the defendant from having a fair and impartial trial is sufficient to entitle him to a new trial. (O'Brien v. Commonwealth, 89 Ky., 360; Cupp v. Commonwealth, 87 Ky., 401; Cook v. Commonwealth, 86 Ky., 665; Flint v. Commonwealth, 84 Ky., 187; McClure v. Commonwealth, 81 Ky., 448; Rankin v. Commonwealth, 82 Ky., 429.)

9. The testimony of the alleged co-conspirators was not competent against each other until the alleged conspiracy had first been proved. (Greenleaf on Evidence, sec. 111.)

10. As to motion to strike bill of exceptions, see Bowman v. Commonwealth, 16 Ky. Law Rep., 186.

C. B. LYTTLE and J. G. FORRESTER of counsel on same side.

JOHN L. SCOTT & SON for appellant Fields.

1. The court erred in admitting incompetent testimony.

2. The defendant Fields was entitled to a peremptory instruction.

3. The court erred in instructing the jury as to a conspiracy, there being no evidence upon which to base such a verdict. (Shelby v. Commonwealth, 91 Ky., 571.)

WM. J. HENDRICK, Attorney-General, for appellee

1. On motion to strike out bill of exceptions, see Baker's heirs v. Gilbert et al., 4 Ky. Law Rep., 621; McAllister v. Insurance Company, 78 Ky., 532; Nolan v. Feltman, 12 Bush, 119.

2. The court will presume everything regular in the absence of a bill of exceptions. (Quaid v. Cornwall, 13 Bush, 601.)

(The bill of exceptions was filed in vacation pursuant to an order allowing sixty days in which to prepare and file a bill. Rep.)

JUDGE GRACE DELIVERED THE OPINION OF THE COURT

This is an appeal by Joseph Adkins and Jesse Fields from a judgment of the Knox Circuit Court, sentencing each of them to confinement in the State penitentiary for life, for the murder of Josiah Combs.

The killing occurred in Hazard, the county seat of Perry county, on the 23d day of September, 1894, same being Sunday, and about 7 o'clock in the morning. Indictment against these defendants was duly found by the grand jury of Perry county on the 13th day of December, 1894, and on

the same day, a motion was made by the Commonwealth, for a change of venue, accompanied by the written statement of the Commonwealth's attorney, in due form, that the state of lawlessness was such in Perry county that a fair trial of the accused on said charge could not be had in that county. This motion was not opposed by the accused, but pending same they filed a joint affidavit, saying that they had been participants in what was known as the French-Eversole feud, that had been going on in Perry county, and naming ten other counties (including the county of Knox), and that the state of public opinion against them among the masses of the people, relations and friends of the Eversole faction and J. M. Combs in the counties named was such that they did not believe they could have a fair trial in either of said counties.

This affidavit was supported by the joint affidavit of three other persons, who simply say "they are acquainted with the facts stated in the foregoing affidavit, and that they believe them to be true."

Upon this state of the record the court made an order removing the cause to the county of Knox for trial, and to this order defendants excepted, and when the case was called in Knox county for trial, and before entering their plea ot not guilty in said court, they objected to the jurisdiction of the circuit court of Knox county, and moved that said cause be remanded to the circuit court of Perry county to be again assigned. This motion was overruled by the court.

It will be noticed that under the statute passed in pursuance of the constitutional authority for the removal of causes by the Commonwealth, where the Commonwealth's attorney has filed his statement showing the necessity of the removal, *"the court may then act on its own personal knowl-*

*edge"* in the removal of the cause either to some adjacent county, or yet to some other county most convenient, and in which the court is of opinion that a fair and impartial trial may be had.

In the order removing this case the court recites that so acting on its own personal knowledge, it removes the case to the county of Knox *"as being the most convenient county for the trial of same, in which this state of lawlessness did not exist."* In this removal the court was authorized so to act, and was not bound by the affidavit of the accused, though supported by the other affidavit, in objecting to the county of Knox.

The objection of the accused to the jurisdiction of the circuit court of Knox county was properly overruled. The Knox Circuit Court began on the second Monday in April, 1895. This cause seems to have been set for the fourth day of the term; the Commonwealth announced ready; the defendants were not ready, and, being required, they filed an affidavit, setting out the absence of some twenty-five witnesses by whom they could prove important and material facts, chiefly relating to an alibi in behalf of both parties, showing that in March before they had procured a subpoena for the witnesses, and placed same in the hands of the sheriff of Breathitt county, where said witnesses resided. Counsel for defendants saying to the court that they did not desire a continuance of the cause for the term, provided they could obtain the attendance of these witnesses at a later day of the court, thereupon the court set said cause for hearing on the tenth day of the term, and upon the representations of the accused that they were poor, and that their witnesses were poor, and had not the means to pay passage from Breathitt county, where they lived, to Knox county, the court made an order, directing that these witnesses should

be summoned and arrested on behalf of the Commonwealth and brought to court.

This warrant of arrest, however, was never issued, and never in fact sent to the sheriff of Breathitt county, but, as shown by an affidavit in the cause, the judge of the court, not in open court but at night, and at the instance of the attorneys for the prosecution, and without the knowledge or consent of the accused or their counsel, appointed one Burton, a witness for the Commonwealth, and one Mann, a resident of Breathitt county, as special bailiffs to execute this process.

It appears from the affidavit of Burton that on going to Jackson, the county seat of Breathitt, he found Mann and had him duly sworn, and that then, having an arrangement with Marcum to furnish tickets by railroad to such witnesses as they might obtain, they summoned for the defendants thirteen witnesses; that of these three were sick and the family of another was sick, but that they did in this way have present, at the time and place agreed on with Marcum, nine of the witnesses of the defense, but that Marcum failed to appear and furnish the transportation, as he had agreed to do. And the special bailiff says that, having no money himself to pay the fare of the witnesses, and the day of trial approaching, he did not place the witnesses under arrest, but abandoned them and returned to court to make his report; that only a single witness was secured by this arrangement.

On the calling of the cause, on the tenth day of the term, the attorney for the Commonwealth again announced ready, and the defendants not ready, and, being required by the court again to show cause, they filed another affidavit, reciting the absence of some twenty-seven witnesses, the materiality of whose evidence in their defense was duly set

forth, together with the facts developed in their efforts to
procure their attendance since the former calling of the
cause, as recited herein, and defendants again asked a con-
tinuance.    Upon an examination of this last affidavit the
Commonwealth's attorney agreed that the same might be
read upon the trial of the cause as the testimony of the absent
witnesses, the counsel for accused insisting, if compelled to
try on this affidavit, that the State should admit absolutely
as true the facts stated in this affidavit.    This the court
overruled.    Exceptions were duly taken, and the court over-
ruled the motion for a continuance.    Exceptions were duly
taken.    Thereupon an examination of jurors, touching their
competency, commenced, and five being obtained who were
qualified, but not finally passed upon or accepted, an ad-
journment was had until the next morning; whereupon, on
the assembling of court next day, defendants offered to file
an additional and amended affidavit, re-affirming the one
filed the day before, and setting forth, in this amended pa-
per, quite a number (some sixteen) witnesses, not before
presented to the court, and whose testimony they say they
have discovered since the filing of their former affidavit.

Most of the witnesses named in this amended affidavit
lived in and near Hazard, the place of the killing, and by the
testimony of six, at least, of them, defendants say they can
prove such facts as will clearly show that five of the six or
seven witnesses for the Commonwealth, who will undertake
to identify Joseph Adkins as the man who did the shooting,
and some of whom identify Fields as the man who was pres-
ent at the time, were not in fact present at the time of this
shooting, and that they did not and could not possibly have
seen, at the time and place they claim to have seen, the per-
son who did this shooting.    So clearly and distinctly is this
evidence embraced in this amended affidavit opposed to the

testimony of the witnesses who testify for the Common-
wealth to the killing that their materiality can not for a mo-
ment be questioned.

If the testimony, as contained in this amended paper of-
fered, is true, then it greatly impairs the most important
and direct testimony of the witnesses for the Common-
wealth, who testify to the killing, and who undertake to
identify Adkins and Fields as the parties who participated
in same.

Quite a number of the witnesses named in the last paper,
it is said, will contradict testimony of Commonwealth wit-
nesses, tending to connect these defendants with the killing,
and same are clearly contradictory of the evidence of the
Commonwealth, as afterwards appears in the trial.

No inconsiderable part of the testimony of the Common-
wealth, tending to identify Adkins and Fields, consisted of
the evidence of certain parties who went in pursuit of the
parties who did the shooting, and who claimed that in a
fight with said parties on that day two of them  shot
and wounded Fields, and at the same time claimed to recog-
nize Adkins as being with Fields in the fight; and yet, by an
examination made only two days later by the friends of
Combs, who was killed, of the person of Fields, it was clear-
ly shown that he had not been wounded at all.

In this amended paper it was stated that the reason that
neither of the defendants had been to Hazard since this kill-
ing to hunt up evidence in their behalf, and to prepare their
cause, was that the state of feeling against them in that town
and county was such that their lives would have been endan-
gered, and that this occasion was the first opportunity they
had to obtain this information.   This affidavit was full in
other respects as required by law.   The court refused to
permit the defendants to file this affidavit, or to give the ac-

·cused, in any way, any benefit of the evidence contained in same, again refusing to continue the cause.

During the day further progress was made in obtaining a jury, but it was not completed, accepted or sworn, and the court again adjourned over until the next day. On the morning of the next day defendants offered to file a fourth affidavit, in which they, still relying upon their former affidavits, say that it is manifest that the testimony to be heard in the case will be extremely conflicting and contradictory, and that the personal presence of their witnesses is highly important, and that, since the calling of this case on the tenth day of the term, the witnesses for the prosecution, conspiring together to intimidate and prevent the attendance of the witnesses for defendants, have procured, by false testimony before the grand jury, the indictment of some of these witnesses for false swearing or perjury, by reason of the testimony formerly given by them before the county judge of Knox county on a motion of bail; and that one of same, Patton, the only one who was obtained by the special bailiff out of the whole twenty-five whom he was ordered to arrest, has been so indicted, and in open court and in the presence of the jury, then approved, arrested on said charge; that they are refused access to or knowledge of these indictments against their witnesses; cannot tell against whom nor how many are indicted, but they say that in all this a fair and impartial trial is obstructed and denied these defendants. On tendering this paper the defendants again moved a continuance. The court refused to permit same to be filed, and again overruled the motion to continue the cause.

It is proper to add that of the witnesses for the defense from Breathitt county, who were relied upon by them to prove an alibi, ten finally appeared and testified to such a state of fact which, if true, showed it impossible that either

of the accused, Adkins or Fields, could have been in Hazard, Perry county, Sunday Morning, September 23, 1894, when the shooting and killing of Combs occurred, this testimony showing the accused to have then been in Breathitt county, thirty miles away from Hazard at the hour of the shooting of Combs. And finally it appears under the affidavit which the accused did file, and the statements of which the Commonwealth consented, to prevent a continuance, might be read as evidence, that the statements of thirteen other witnesses were read on this same matter of an alibi; that these statements were given with great detail and circumstance of time and place, and showing conclusively, *if true*, that the accused could not have been in Hazard, Perry county, at the time of the killing of Josiah Combs.

Counsel for the defendants contend earnestly that in all this proceeding their clients have, by this combination of circumstances, one of the affidavits filed showing the absence of their chief attorney, who was acquainted with all the facts of the case, and, by the rulings of the court, been deprived of a fair and impartial trial; that they have not been allowed a reasonable opportunity to prepare their defense in a case of such grave magnitude to them; and particularly do counsel complain that their clients have not been awarded *that compulsory process of the law to compel the attendance of their witnesses,* as guaranteed under the Bill of Rights (a part of the Constitution of the State) to every person accused of crime; that their clients have not been accorded any reasonable opportunity for the operation and execution of such compulsory process as provided by the supreme law of the land; that, instead of this process, which, under the law, should have gone to the sheriff of Breathitt county, same was not so awarded, but that, in disregard of this law and as a substitute therefor, a special bailiff was appointed

by the judge of the court, at the instance of the attorneys employed to assist the Commonwealth in this prosecution (and which was so ordered without their knowledge or consent), and while counsel do not question the good faith of the court in making this special order, yet they say the utter failure of which process to the special bailiff was due to the failure of one of the attorneys for the Commonwealth to furnish the transportation as he agreed to do.

All this is shown by the affidavit of the special bailiff in the record and remains unexplained. And that finally they were forced into trial without the personal attendance of many of their material witnesses, and, as to some of them, compelled to try without any benefit whatever of their testimony; and, as to the others, only on the admission by the Commonwealth that the affidavits should be read as the testimony of the absent witnesses, and not upon the condition that the statements should be taken as true.

Counsel question the constitutionality of the act of 1886 in reference to the trial of criminal cases, whereby this proceeding is made possible under the Code. Counsel say that this question has often been presented to this court but not decided, and they insist, in this case, that it is due to their clients, as well as to the trial courts of the State and to the profession, that it should be determined.

The provision upon which counsel rely is found in the eleventh section of the Bill of Rights, adopted as a part of the present Constitution of Kentucky, and is as follows:

"In all criminal prosecutions the accused has the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face, and to *have compulsory process for obtaining witnesses in his favor.*"

These are substantially the same provisions on this sub-
ject as contained in the old Constitution of Kentucky.

Under our Criminal Code, adopted soon after that Con-
stitution went into operation, it was provided, section 188:

"When an indictment is called for trial, or at any time
previous thereto, the court, upon sufficient cause shown by
either party, may direct the trial to be postponed to any
time in the same term." And by section 189: "The pro-
visions of the Code of Practice in civil actions in regard to
postponement of the trial of actions shall apply to the
postponement of prosecutions, on application of the
defendant, except that, when the ground of application for a
continuance is the absence of a material witness, and the
defendant makes affidavit as to the facts which such witness
would prove, the continuance shall be granted, unless the
attorney for the Commonwealth admit upon the trial that
the facts are true."

These provisions, found in the Code of 1854, became the
rule of practice in the trial courts, and from time to time it
was, either by implication or directly, approved by this
court; and in the case of Pace v. Commonwealth, 89 Ky.,
206-9, this court expressly affirmed the constitutionality of
that act; and such continued to be the law and rule of prac-
tice in criminal cases up to May, 1886.

During all these years it became manifest that the rule
requiring the State to admit as absolutely true whatever
the accused might, by his *ex parte* affidavit, say he could
prove by an absent witness materially impaired the execu-
tion of the criminal law; that, by its operation, it was placed
in the power of an unscrupulous criminal, aided by expert
and ingenious counsel, to long and indefinitely delay the
trial of his cause, or else to compel the State to admit facts,

for the purpose of a trial, which often, in effect, was equiv-
alent to a verdict of acquittal.

In this way, and by the operation of this provision, the
criminal law was brought into disrepute and by many held
in contempt, and the courts and officers of the law censured
for the long delay and final failure of justice.   To remedy
this crying evil the Legislature, in 1886, amended the pro-
visions of the Code of 1854 in reference to the terms on
which the State might procure a trial of criminal causes,
and provided that the State might demand a trial at any
term of the court after the one at which the indictment was
found, by admitting, not that the facts claimed by the ac-
cused that he could prove by any absent witness *were true*,
but by admitting that if such witness was present and tes-
tifying that he would state the facts as claimed by the ac-
cused in his affidavit.   This latter amendment, however, still
containing a provision that the court might, in its discretion,
where the ends of justice seemed to require it, compel the at-
torney for the Commonwealth to admit *the truth of the state-
ments contained in the affidavit* of the accused.   This
amendment of 1886 also contained further clauses author-
izing the State to contradict the statements of the
affidavit by other testimony, and to impeach the absent wit-
nesses by whom it was claimed such testimony would be
given.

This law has been the rule of practice in the circuit courts
of the State since its enactment.

It is conceded that its provisions are widely different, and
make a material modification of the Code of 1854 on this
subject.

It may be also observed of this new provision that, in prac-
tice, it has been found a great improvement upon the old law,
in that it enables the State, in a reasonable time, to force a

Adkins v. Commonwealth.

trial of its indictments notwithstanding the continued and persistent efforts of the accused to delay and continue.

We call to mind no provision of the Criminal Code that has been found so valuable, and of such material aid to accomplish a speedy trial, as that contained in this amendment. In our experience, drawn from the many records of criminal trials brought before us, as well as in our own personal observation, men do not commit crimes that they may be punished, or for the sake of the punishment affixed by law; but from motives of malice, in obedience to, or to gratify, some unlawful passion for purposes of gain, by force or fraud.

Yet the question remains whether this amendment of 1886 is constitutional.

Of the provisions of the Bill of Rights, section 11 before quoted, as applicable to this case, there are two clauses, one affirming the right of a person accused of crime to meet the witnesses face to face; of course this means the witnesses that may be called by the State against him. The other provision is that the accused shall have the right to "the compulsory process of the State for obtaining witnesses in his favor." The one provision is equally as authoritative, as clear, and its meaning as obvious, as the other. No effort has ever been made by the legislature to impair, in any degree, the efficiency of the first clause quoted, "that accused shall have the right to meet the witnesses (called against him) face to face." We apprehend that no such effort would be tolerated by the courts. And yet this section 11 of the Bill of Rights by no means contains the whole law applicable to the criminal code of the State. It is easily, fairly and clearly deducible from the constitution that it is the first and highest duty of a State to its citizens to preserve the public peace, and, by its laws and through its courts and law officers, to afford full, complete and ample protection to all

its citizens in life and limb, reputation and property. This is the very foundation stone of its authority and right to exist as a government at all.

This end can only be accomplished, first, by the enactment by the legislative power of appropriate laws for the protection of its citizens, to which should be annexed appropriate penalties for violation of the same.; and, second, by the courts in faithfully and diligently enforcing these laws and punishments.

It is well agreed by text-writers and courts that it is the certainty of punishment that deters bad men from the commission of crime. So that we find that the provision of section 11 of the constitution under consideration is but a part of the whole. It is but a provision in behalf of one accused of crime to have the process of the State to compel the attendance of his witnesses. And yet the question is presented whether this provision shall override and dominate every duty of the State to the citizen. Whether, after the compliance with this provision of the constitution in awarding to the accused the compulsory process of the State, wherein and whereby is given reasonable time and opportunity for the execution of the same; and yet, after all this has been done, and the actual attendance of every possible witness failed to be obtained, what shall then be done? Shall the accused be discharged without trial and, of course, without punishment, or shall the legislature make some other and further provision applicable to that state of case?

It did undertake to make such further provision by the Code of 1854, in allowing the State a trial upon admitting as true the facts stated by accused that he could prove by absent witnesses. This provision having, on a fair trial, been found highly detrimental, if not subversive of the whole Criminal Code, was, by the amendment of 1886 under

consideration, abandoned, and a different mode adopted by the legislative will. This consists, as we have seen, in only requiring the State to admit that the absent witnesses, if present, would testify as claimed in the affidavit.

On the face of the acts in question neither of them, either in letter or spirit, violates the provisions of the constitution. They are but an expression of the legislative will as to what shall be the rule of procedure by the court on a state of case where the accused, having had awarded him this compulsory process of the State to obtain the attendance of his witnesses, and having been allowed a reasonable time and opportunity to enforce this writ, yet on the calling of his cause for trial finds himself without the actual presence of all the witnesses whom he desires. In this state of case the amendment of 1886 under consideration provides that the State may have a trial, if the prosecuting attorney will admit to be read, as the evidence of the absent witnesses, the affidavit filed by the accused.

Either act, viewed and interpreted and administered so as to substitute the provisions of either for the constitutional guaranty to the accused of the compulsory process of the State, with reasonable time and opportunity for the execution of same, would be bad. But neither provision, either of the Code of 1854 or of the amendment in question of 1886, is bad, construed and enforced in the light of the interpretation herein indicated, and this, we think, is the true meaning and interpretation of the clause in the constitution before quoted, and of the amendment of 1886 to the Code.

In adopting this construction the prisoner is deprived of no right guaranteed to him by the constitution, and the State is also, by this amendment of 1886, enabled to obtain a trial within a reasonable time, and thus give to all her cit-

izens the benefit of the laws enacted for their security and protection. Reviewing this case in the light of this interpretation, and upon the facts disclosed by the record, we feel constrained to say that the accused have not, in the trial of this case, had awarded them the compulsory process of the law, with reasonable time and opportunity to obtain the benefit of same. And for this reason the judgment of conviction as to both appellants, Adkins and Fields, is reversed, and the cause remanded to the Knox Circuit Court for further proceedings therein not inconsistent with the principles of this opinion.

We might add that we do not view with approval the filing of indictments by the grand jury of Knox county, based solely on the evidence of the witnesses for the prosecution, in the criminal case under trial, against the witnesses of the defendants, who had theretofore testified to facts showing, in behalf of the accused, an alibi. The filing of same in the presence of those summoned to serve as jurors in the trial of the murder case was not calculated to give to the accused that fair and impartial trial contemplated by law.

Many other objections are made by counsel for appellants on this appeal, but, outside of the matters indicated, we find the record substantially correct and free from error.

The case needed no other evidence to authorize the submission of the conspiracy between these parties and others to do the deed than the evidence tending to identify them as the persons actually present and participating, and tending to identify them as the parties found in the woods, a few miles away, and with whom the posse claims to have had an encounter. That there was yet a third man stationed on the hill, opposite the town, who participated in the firing on Combs, or at least at the time of his killing,

seems to be conceded. This third man might well corres-
pond to the one of the three men found in the woods by the
posse.

The court seems to have kept steadily in view the prin-
ciples heretofore announced by this court, that evidence
tending to connect the accused with the faction adverse to
the Combs people must be of a general nature only, and
that it was not proper for either party to go into the partic-
ulars of any transaction. And further, the court warned the
jury that the evidence admitted on this line could only be
considered by them in supplying a possible motive for the
commission of the offense with which they now stand
charged. Neither was it necessary for the court, all through
the trial, when the defendants were being tried together,
to be constantly warning the jury that this or that particu-
lar evidence was either to be considered only against or in
favor of one or the other of the accused. The jury may be
fairly supposed to possess sufficient intelligence to distin-
guish and apply the evidence properly.

Another matter complained of is that the court, on enter-
ing upon the trial, disregarded the order of the county judge
of Knox county previously made allowing bail; held the
bond taken bad on its face, as not being taken by the proper
officers, and then ordered the defendants into actual custo-
dy. There was no error in all this. It would be a strange
provision of the law if a county judge could dictate to a
circuit judge what course he should pursue on the trial of
one charged with felony in his court. It was within the
discretion of the court to order defendants into actual cus-
tody when the trial commenced. Neither should the order of
the county judge heretofore made have any effect, or be re-
garded of any validity. If the prisoners desire to again

give bail, new proceedings for this purpose will be necessary before the proper officer.

We mention these things only because questions of a similar nature may again arise in any future trial of the defendants, and, as this cause must go back for a re-trial, we have carefully refrained from expressing any opinion as to the merits of the case on the evidence. This is purely and exclusively a question for the jury to determine.

The motion by the Commonwealth to strike the bill of exceptions from the record is overruled.

Judgment reversed.