# Harris v. Commonwealth.

(Decided March 26, 1915.)

Appeal from Fulton Circuit Court.

1. Continuance—Larceny—Trial—Continuance Properly Refused.—Where on the trial of the defendant under an indictment for grand larceny, he asked a continuance because of political excitement in the county over a homicide, and the refusal of an attorney whom he had employed to defend him; as the affidavits for such continuance failed to show any connection between his crime and the homicide, or that he was not properly defended by other counsel who represented him on the trial, the overruling of the motion for such continuance was not error.

2. Continuance—Affidavit—When Refusal of Time to Prepare Same Not Error.—Where, after the calling of the case for trial, the accused asked of the court time to prepare a second affidavit showing the absence of material witnesses and the facts to which they would testify, the court refused the time asked, but told the accused that he might prepare and file the affidavit at any time before the evidence for the Commonwealth was concluded, and when prepared and filed that its contents might be read as the depositions of the absent witnesses; as the accused failed to prepare or file such affidavit, it will be presumed that there were no absent witnesses whose testimony would have been beneficial to him, and in such state of case the ruling of the court complained of was not error.

3.  Evidence—Incompetent Evidence—When Admission of Will Not
    Be Treated as Error.—The admission of incompetent evidence will
    not be regarded as error when such evidence was not objected
    to by the accused, nor an exception taken to the ruling of the
    trial court in admitting it.
4. . Trial—Misconduct of Juror—When Not Ground for New Trial.—
    The alleged misconduct of a juror in permitting a person not of
    the jury to say in his presence that there appeared to be little
    evidence on which to convict the accused, could not have been
    prejudicial to the accused and was insufficient to authorize the
    granting of a new trial, as it was made to appear from the bill of
    exceptions that the juror made no reply to the statement and that
    during the deliberations of the jury he voted to acquit the
    accused, and was one of the last to vote for his conviction.
5.  Appeal and Error—Empaneling of Jury—Error in Cannot Be Re-
    viewed.—Section 281 of the Criminal Code prevents the Court of
    Appeals from reviewing any rulings of the trial court in the
    matter of selecting or empaneling the jury.

F. S. MOORE for appellant.

JAMES GARNETT, Attorney General, and CHARLES H. MORRIS,
Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, Oce Harris, was tried and convicted
in the Fulton Circuit Court, under an indictment charg-
ing him with the crime of grand larceny, the verdict of
the jury fixing his punishment "at not less than one
year and not more than one year and one day in the
State penitentiary." He was refused a new trial and
now seeks a reversal of the judgment on the grounds
that the circuit court erred: (1) In overruling his motion
for a continuance; (2) In refusing, when his case was
called for trial, to allow him time to prepare an affidavit
showing the absence of certain witnesses and the facts
to which they would testify, in substance, on the trial;
(3) In admitting incompetent evidence; (4) In not prop-
erly instructing the jury and failing to instruct them on
the whole law of the case; (5) Because one of the jury
had formed an opinion in the case before the trial; (6)
Because of misconduct of a juror in permitting persons
not of the jury to discuss the case in his presence; (7)
Because the verdict is contrary to law and not sustained
by the evidence.

In stating the facts necessary to an understanding
of the case the seventh and last ground urged for the

reversal can more properly be first disposed of. The following facts appear from the evidence: On Sunday night, June 21, 1914, a safe owned by R. G. and E. R. Stone, situated in their drug store in the City of Hickman, and used for storing their account books and money, was opened and as much as $200.00 in money and checks stolen therefrom. Appellant had, some time previously, been in the employ of the Stones as a clerk in the drug store, and was familiar with the business, location of the safe and the purposes for which it was used. After leaving their employ it was his habit to spend much of his time about the drug store. The safe was one of old style, without a combination lock, and was locked and unlocked with a brass key.

On Saturday afternoon, June 20th, R. G. Stone, one of the proprietors and manager of the drug store, on account of a death in his family, was called to his former home in the State of Missouri, just across the Mississippi River from Hickman. Before leaving the drug store Stone placed about $120.00 in money and checks in the safe and left the store in charge of his clerks, Swain, Curlin and a boy, Floyd Atkinson, who was the clerk in the soft drink department of the store. At 10:30 o'clock on Saturday night Atkinson put in the safe with the other money left there by Stone in the afternoon, about $80.00, the proceeds of Saturday's cash sales, and on Sunday night, June 21st, he also placed in the safe the money representing the cash sales of Sunday, the amount of which is not shown. There was, however, in the safe on Sunday night about $170.00 or $180.00 and $20.00 or $30.00 in checks. At seven o'clock on Sunday night Atkinson closed and locked the drug store and went to his home, a short distance from the store.

At about twelve o'clock Sunday night, according to his testimony, he was aroused and called to the door of his home by appellant, who requested of him the keys to the drug store, saying that he wished to get Mr. Swain, one of the clerks, to get some medicine for his (appellant's) baby, who, he said, was sick, whereupon Atkinson gave him the drug store and safe keys, which were attached. Upon leaving, appellant said to Atkinson: "Mr. Swain will bring these keys back tonight." Appellant then left and Atkinson returned to his bed, telling his mother, who had been awakened by the coming of appellant, that he had been "getting the keys for Mr. Harris." The keys were not delivered by appellant

to Swain, nor was the latter asked by him to go to the drug store and get medicine for his baby. Swain did not return the keys that night to Atkinson, nor were they ever returned by anyone. When Stone, the proprietor, returned to the store Monday morning he was informed by Atkinson as to what had taken place. It was discovered that the safe was locked as usual, but upon its being opened by a blacksmith, who was called in for that purpose, it was discovered that the money box, together with the money and checks which had been placed therein on Saturday and Sunday, was missing. Atkinson having received information that appellant left Hickman Monday morning saying he was going to Paducah, tried to call him up there over the telephone. Instead of going to Paducah, however, as he had told several persons he would do, appellant had, in fact, gone to Memphis, Tennessee, where he was, upon telegraphic order, arrested, and later brought back to Hickman. When arrested in Memphis he was intoxicated, and a search disclosed about $90.00 on his person.

It also appears from the evidence that appellant was a man of very limited means; that but a day or two before he left Hickman he had declined to pay some debts, on the ground that he had no money; and on the day before he left for Memphis, or to go, as he said, to Paducah, he had tried to borrow money for the trip. It further appears from the evidence that very early on Monday morning, after making some purchases for which he paid the cash, he arranged with the owner of an automobile to carry him in his machine to Fulton in time for the 6:30 a. m. train going to Paducah. The man with whom this arrangement was made did not take him to Fulton, but he managed by some means to reach that city in time for a 6:30 train going in the opposite direction from Paducah, before entering which he purchased a ticket to Memphis. To two acquaintances whom he saw on the train he said: "If anybody says anything about me over at Hickman I am supposed to be going the other way."

After the foregoing facts had been established by the evidence for the Commonwealth, appellant, testifying in his own behalf, denied getting the keys from Atkinson or taking the money out of the safe in the drug store, and attempted to account for the money which was found upon him at Memphis by stating that after a restaurant, which he had owned, was destroyed by fire in

April, he had succeeded in collecting some small accounts, amounting altogether, to about the sum found on his person in Memphis. According to his further testimony, he had $500.00 insurance on the restaurant when it was burned, but he admitted that this insurance all went to his creditors and that none of it was received by him. He gave no account of his whereabouts on Sunday night.

We are at a loss to understand how, in the face of these facts, his counsel can claim that the verdict of the jury is not sustained by the evidence. We are unable to see how the jury could have reached any other conclusion than that expressed by the verdict.

Appellant's first contention, making complaint of the court's refusing him a continuance of his case, must necessarily be overruled. The affidavit upon which the motion for the continuance was based is by no means definite in its statements or clear in meaning; it, however, in substance, sets out the killing of one Tyler shortly before appellant's trial; the prevalence of public excitement over that event; the existence of bad feeling between the friends, personal and political, of Tyler and those of his slayer; and that he (appellant) was accused of belonging to the faction composed of the friends of the latter, by reason of which he incurred the ill will of the other faction and lost the services of H. T. Smith, an attorney who had been employed to defend him, but later refused to do so; and that such refusal on the part of Smith left him unprovided with counsel, and, together with the excitement and ill-feeling over the killing of Tyler, prevented his making the necessary preparation for the trial of his case.

We can understand how the excitement and ill-feeling resulting from the killing of Tyler, if it was as great and involved appellant to the extent claimed in the affidavit, might have been urged by him with some degree of plausibility as a ground for a change of venue; but it does not appear from the affidavit how these things could have interfered with his getting ready for the trial of his case. It will be recalled from the statement we have given of the facts, that appellant's arrest for the larceny with which he was charged, occurred within a day or two after the commission of the crime, and we gather from the record that the indictment was returned September 25, 1914, that the case was called for trial January 19, 1915, and the trial completed on the following

day. Appellant had, therefore, from June 22 or 23, 1914, until January 19, 1915, to make such preparation as was necessary for his trial. It appears from the affidavit of Smith, found in the record, that he had never been employed by appellant to defend him, and as he was well represented upon the trial by three attorneys, and it was not made to appear that they had not been employed a sufficient length of time before the trial to prepare his defense, it is not perceived how he could have been prejudiced by the refusal of Smith to act as his counsel. In view of the foregoing facts the refusal by the circuit court of the continuance was not error.

Appellant's second contention is equally untenable. It rests upon the ground that he was prejudiced in some substantial right by the court's refusal to allow him time to prepare a second affidavit for a continuance, showing the absence of material witnesses and the facts to which they would testify, in substance. It does not appear from the bill of exceptions that appellant was refused time to prepare the affidavit in question. It does appear, however, that upon the calling of the case the court refused to continue it or delay the trial, that appellant might prepare the affidavit referred to; and it also appears that in ordering the trial to proceed the court informed appellant and his counsel that the desired affidavit could be prepared at any time during the introduction of the Commonwealth's evidence, and when prepared and filed that its contents might be read as the depositions of the absent witnesses. It further appears from the bill of exceptions that appellant, although thus given leave by the court to later prepare and file such affidavit and to read its contents as the depositions of the absent witnesses, never availed himself of the privilege thus accorded, and if the affidavit was ever prepared it was not offered to be filed or read to the jury.

The above ruling, instead of being prejudicial, gave appellant free rein to attribute whatever statements he pleased to the absent witnesses and in that way get before the jury evidence in his behalf which they might not have furnished if present and testifying in person. But beyond all this, as no affidavit was filed or offered to be filed, we must presume in its absence, that there were no absent witnesses whose testimony was desired by appellant. As there is nothing in the record to show who the absent witnesses were or what their testimony

would have been, we cannot say that the ruling of the circuit court complained of was error.

Appellant's third contention is unsupported by anything appearing in the record. It is insisted for appellant that the testimony of Floyd Atkinson was incompetent and its admission prejudicial to appellant. We have carefully read the testimony of Floyd Atkinson, as well as that of all other witnesses, appearing in the bill of evidence, and have failed to find that any part of his testimony was objected to by appellant's counsel, or that the ruling of the court with reference to any part of it was excepted to by them. Moreover, the whole of it appears to be competent, except the conversation that he had with his mother at the time appellant obtained of him the store and safe keys. It would have been permissible for him to have stated the fact that his mother was awakened by the coming of appellant and that he (Atkinson) then had a conversation with her with respect to the object of his visit, but he should not have been permitted to relate in detail the conversation with his mother. But even if this conversation had been excepted to, in view of the abundant evidence of appellant's guilt otherwise furnished by Atkinson and other witnesses, we would be unwilling to hold that his relation of the conversation with the mother was sufficiently prejudicial to compel a reversal of the judgment.

Appellant also complains of the testimony of Swain, Choate and Dodds, given as to the reputation of appellant for truth and veracity, but we also find that there was no objection made or exception taken to the testimony of any of these witnesses; therefore the ruling of the court in admitting it will not be considered.

The record furnishes no ground for appellant's fourth contention, which is as to the instructions given by the court. There were but two instructions given.

Instruction No. 1: "If the jury believe and find from the evidence in this case beyond a reasonable doubt that the defendant, Oce Harris, in Fulton County, on the 24th day of September, 1914, and before the finding of the indictment herein, did with force and arms unlawfully and feloniously take, steal and carry away goods and lawful money of the United States of North America to the amount and value of more than twenty dollars, the personal property of R. G. Stone and E. R. Stone, with the felonious and fraudulent intent then and there to convert the same to his own use and to permanently

deprive the said E. G. Stone and E. R. Stone of their property therein, without the consent of said R. G. Stone and E. R. Stone, then the jury will find the defendant guilty of grand larceny as charged in the indictment and fix his punishment at confinement in the State Penitentiary for a minimum term of not less than one year and for a maximum term of not more than five years, within said limits.''

Instruction No. 2: ''The law presumes the defendant to be innocent until proven guilty beyond a reasonable doubt, and if upon the entire case the jury have a reasonable doubt of defendant's having been proven guilty, or a reasonable doubt as to any fact necessary to establish his guilt, then you will find the defendant not guilty.''

The second instruction admirably states the law. The first instruction is open to but one criticism. It required the jury, in order to find appellant guilty, to believe from the evidence beyond a reasonable doubt, not only that he did unlawfully and feloniously take, steal and carry away the money described in the indictment, with the felonious and fraudulent intent to convert it to his own use and to permanently deprive the owners of their property therein, but, in addition, to find that such unlawful and felonious taking and stealing of the money was done with force and arms. The addition of the words ''force and arms'' to the instruction, while unnecessary and improper, is not such a defect as will constitute error. We only mean to say that, in view of the facts presented by the record, the instruction would have been perfect without these words, but their use made it unduly favorable to appellant, of which, however, he cannot complain. The two above instructions gave the jury all the law of the case.

Appellant's fifth contention is without merit. It makes the complaint that Willie Walton, one of the jury, had stated before the trial that he knew all about the facts of the case, that appellant was one of the courthouse clique and was guilty. The record furnishes neither affidavit nor other proof to sustain this complaint, nor does the brief of appellant's counsel refer us to anything in the record giving it support. There being nothing in the record to support the contention, we are not called upon to consider it.

Appellant's sixth and only remaining contention cannot prevail. It makes complaint of the alleged misconduct of a juror, James Jackson, in that he permitted a

person or persons not of the jury to discuss in his presence and hearing the evidence in the case and express his or their opinion as to the effect of the evidence. The only basis for this complaint is furnished by the affidavit of Barney Owens, which contains the admission that he said to Jackson, as they were leaving Pendleton's restaurant during appellant's trial: ''I hear there is very little evidence on which to convict Oce Harris,'' to which Jackson made no reply. The jury were not required to be kept together, nor were they placed in charge of an officer, until the case was submitted to them after the conclusion of the evidence and the arguments of counsel, and the above statement of Owens was previously made to Jackson. Owens should not have made the statement, but it is not apparent from the record that it was in any way prejudicial to the appellant, for we find from the affidavit of J. W. Walton, one of the jury, that Jackson, during the deliberations of the jury, voted to acquit appellant and was one of the last to vote for a conviction. It is manifest that this contention must be, and it is, overruled.

Complaint is made in the brief of appellant's counsel that the trial court erred in selecting or impaneling the jury. It will not be proper to consider this complaint. It was not made a ground for a new trial, and if it had been, Section 281, Criminal Code, would prevent us from reviewing any ruling of the court in that matter. Deaton v. Commonwealth, 157 Ky., 312.

The brief of counsel also makes complaint of the form of the verdict, it being insisted that it does not provide indeterminate punishment. The verdict is not open to this criticism. It fixes the punishment of appellant at confinement in the penitentiary not less than one year nor more than one year and one day. In thus indicating two periods of time, a minimum and maximum limit of punishment is given, which makes the verdict and judgment entered thereon indeterminate in the meaning of the statute. In expressing this conclusion, however, we have transcended the bounds of duty, as this complaint was not made a ground for a new trial. Cheek v. Commonwealth, 152 Ky., 56.

The record furnishing no cause for disturbing the verdict, the judgment is affirmed.