## Smith v. Commonwealth.

(Decided September 23, 1924.)

### Appeal from Caldwell Circuit Court.

1. Jury—Court Held to have Properly Refused to Discharge Entire Panel Hearing Testimony in Previous Case.—In prosecution for malicious shooting, court did not err in denying motion to discharge entire panel, because defendant's brother was tried for different offense, and prosecuting witness in that case detailed his version of what occurred in defendant's case, where it appeared all jurors qualified as having formed or expressed no opinion, and court was convinced that no bias existed.

2.  Criminal Law—Decisions upon Challenges to Panel Not Subject to Exception.—Decisions of court upon challenges to panel cannot be considered on appeal, in view of Criminal Code of Practice, section 281.

3.  Assault and Battery—Evidence Held to Sustain Conviction for Malicious Shooting, Without Wounding.—Evidence held sufficient to sustain conviction for malicious shooting without wounding.

4.  Criminal Law—Province of Jury to Judge Credibility of Witness.— It is province of jury to judge credibility of witnesses, and its verdict will not be disturbed, unless flagrantly against evidence.

R. W. LISANBY for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Appellant was convicted of the crime of malicious shooting without wounding and his punishment fixed at confinement for one year in the penitentiary. It appears that on the day before his trial his brother was tried in the same court for a different offense; that the prosecuting witness in this case testified in that and was permitted to detail his version of what occurred in this case, and that this was heard by all the regular jurors. That fact was presented by affidavit, and made the basis of a motion to discharge the entire panel of the jury. The court overruled the motion and this ruling is assigned as reversible error.

It appears that all the jurors qualified, as having formed or expressed no opinion in reference to the matter and that the trial judge was convinced that no bias existed by reason of the matter complained of; and besides section 281 of the Criminal Code provides: "The decisions of the court upon challenges to the panel and for cause or upon motions to set aside an indictment shall not be subject to exceptions."

This provision has been upheld in a long line of decisions, and precludes us from considering the question. Harris v. Com., 163 Ky. 781; Chaney v. Com., 149 Ky. 464; Childers v. Com., 161 Ky. 440; Lawson v. Com., 152 Ky. 113; Deaton v. Com., 157 Ky. 308; Frasure v. Com., 180 Ky. 274; Daugherty v. Com., 157 Ky. 348; Leadingham v. Com., 182 Ky. 291.

It is next urged that the verdict is not sustained by sufficient evidence. It appears that some months previ-

ously the prosecuting witness and others in the neighborhood had undertaken to establish a telephone line across a farm belonging to appellant's family; the latter had objected to this, and thereby ill-feeling had been engendered. The prosecuting witness states that about three o'clock in the afternoon he had driven a load of corn to his crib preparatory to unloading it and was looking for a plank when his attention was called to defendant, who was going up the road with his dogs; his attention was also called to a wagon containing several persons that was passing his house some distance away; that defendant went up the road for a short distance and fired a pistol; that at the time he was not looking directly at the defendant but did center his attention on him then; that defendant raised his pistol in both hands, pointed it directly at him and fired the second time, the shot taking effect in a bank about ten feet away, and that defendant was then ninety-two steps from him; that he could tell that he was using a pistol and it looked to be a .38 Colt. In another place he states that at the time the pistol was fired the dirt flew up in about three or four feet from him; that the parties in the wagon came on up the road and passed defendant, after which he (defendant) left the main road and went out through the woods. Those in the wagon were Will Fralie, his wife, and Mary Ort and Iva Ort.

The driver of the wagon, Will Fralie, states that he heard the report, saw the smoke and saw the defendant, but did not see the shot fired; that there were some bushes along the road that would prevent his seeing such, and also he was watching his mules, which were frightened. He drove up and passed the defendant on the road and spoke to him. Defendant had nothing in his hand but was reaching down to rub his leg as though it was hurting him. He was sixty yards from the defendant at the time of the shooting.

Iva Ort says she saw Smith shoot twice and the smoke of the pistol went in the direction of Wade; that as they passed defendant he was standing bent over and said nothing.

Mary Ort says that she saw Carl Smith on the side of the road, and that he shot, . . . she thinks a pistol; saw the smoke from it and that it was pointed toward Mr. Wade; that defendant remained standing until they passed him.

Guy Smith anl Elsie Fralie were walking behind the wagon. Guy says he saw defendant throw his arm up and heard the report, but did not see the pistol or any smoke. This was on Friday afternoon. As they passed by defendant he had hold of his breeches leg, but did not see any pistol or anything in defendant's hand. On Monday following he found some cartridges on the ground near the place defendant was standing, but on the opposite side of the road.

Elise Fralie, who was walking along with Smith, did not hear the shooting or see defendant until he got within a few feet of where he was standing. He was present on Monday following when Smith found the cartridges and saw him do so.

Defendant denies shooting a pistol at all or that he had one, denies seeing Wade or attempting to injure or alarm him; admits that he was present when the parties passed in the wagon; claims that he was playing with a carbide can, shooting it in sport; that this can had been left by his brother at the house of Mr. Lewis and that he had been to Mr. Lewis' for dinner; that his brother and others went to a school entertainment, but that he went home and carried the carbide can with him; that Ort, Smith and Wade did not like him and that this arose over the telephone transaction mentioned above; he also presented the carbide can in court and made a demonstration of firing it before the jury. It is shown that such can may be manipulated in such a way as to produce an explosion sounding something like the report of a gun, and he proved by others that he and his brother were in the habit of playing with the can; that he was at Lewis' at the time claimed and did get the carbide can at that place and carried it home with him; he further proved that he did not own a pistol or have one at the time.

There is other evidence to the effect that owing to the underbrush topography of the hill that the parties in the wagon could not have seen defendant at the time of the alleged shooting, if the parties had been located as claimed by the Commonwealth witnesses.

Without further elaboration it may be said, while the issue of fact was perhaps close, the jury saw and heard the witnesses and it was its province to judge of their credibility, and it cannot be said that their verdict is flagrantly against the evidence.

There being no other errors claimed the judgment is affirmed.