## Turk v. Commonwealth.

(Decided March 27, 1931.)

J. D. VIA, MILLER HUGHES, NOYL B. ROGERS and M. C. ANDERSON for appellant.

J. W. CAMMACK, Attorney General; JAMES M. GILBERT, Assistant Attorney General, and W. J. WEBB for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Reversing.

Lucian Turk was indicted in the Carlisle circuit court for the murder of Stewart McCloy. On motion for a change of venue the case was transferred to Hickman county and was there tried, resulting in a verdict and judgment finding Turk guilty of manslaughter and fixing his punishment at ten years' imprisonment. He appeals.

The facts are these: McCloy ran a store in Bardwell. His residence was about two squares from his store. Turk had married his daughter, Zenada, and lived near Bardwell; they had two children, a girl and a boy. In March, 1925, when Turk was drinking and he and his wife were in a quarrel, she spit in his face and he struck her, or as he says he slapped her; she thereupon took the two children and went to her father's and brought a suit against Turk for divorce. A few months later things were arranged between them and she went back to her husband, and, so far as appears, things went along all right until about August 23, 1929, when McCloy was killed. That morning Turk took his wife and children over to her father's in his car. He wanted her to go with him to the fair at LaCenter that day, but she declined to go, and stayed at her father's. He went to the fair and took the little boy, then six years old, and a friend. The little girl stayed with her mother, who went on that day with Mrs. McCloy to Fulton, the old home of the family, to see some friends, returning about 6:00 p. m. As Turk came back from the fair he stopped at a negro's house, who had a pistol for sale, and got the pistol. He said that prowlers had been about his house and that he wanted the pistol for the protection of his home. He did not buy it, but got it on trial. The negro oiled the pistol before he gave it to him and shot it three times, then loaded it again. When Turk got back home he went over to McCloy's house for his wife and child. He asked his wife to go home, but she did not get in the

car. The little boy asked for an ice cream cone; the wife went back in the house and after another stop he drove the child down to an ice cream parlor, which was adjoining McCloy's store; the doors of the two places being about 30 feet apart. On the trip that day to Fulton, as shown by the commonwealth, Mrs. Turk had told her mother that on the night before Turk had told her that he would kill her and her father before the next night, and when Turk left in the car Mrs. McCloy went down to the store and told her husband that she had learned that Turk had made this threat, and he at her suggestion, telephoned home to his son to bring him his pistol. The son brought the pistol, and in the meantime Mrs. Turk and the little girl had come to the store from McCloy's house. About this time Turk was honking the horn of his car in front of the ice cream parlor, and Mrs. Turk went out to the car and had some talk with her husband in which he asked her to have a soft drink and also asked her to get in the car and go home. While they were thus talking this occurred, as stated by T. M. Collins, the present county attorney, who was passing in front of McCloy's store:

"It was 8:30 P. M. McCloy was standing in the front of his store; his attention was directed north or toward the ice cream parlor. I observed that he was looking that way and saw a lady coming from the direction of the car, something like 20 feet down the walk-way and just behind her I observed Lucian Turk getting out of the car; McCloy said, Zenada you come on in here'; she came on and went in the store and immediately after this he said to Turk, 'Don't come in here, I didn't call you.' Turk said, 'Since when did you get authority to tell me where to go?' There was an exchange of words that I didn't understand. Turk continued to advance, McCloy said, 'Don't come any further, you stop there.' About that time Turk reached in his pocket and pulled out a pistol, leveled down at McCloy and fired, possibly one or more times, then McCloy fired and there was a volley of firing. Turk moved up, practically in front of the alcove. McCloy circled out into the street and at the end of the firing fell in the street and when I got to him he was dead."

Several other witnesses for the commonwealth testified, in substance, to the same facts, and say that Turk fired three shots before McCloy got his pistol out. Turk was shot twice in the abdomen and once in the back, and there were some other wounds not so serious. He testified in substance, that McCloy reached in his bosom for his pistol; that he had no thought of trouble until McCloy drew his pistol, and that when he saw the pistol coming out he drew his pistol,.and that both fired about the same time. He also testified that he and McCloy were on good terms; that on the 21st of August he had stayed in the store for McCloy and run the store for him on that day while McCloy had to be away, and that he had no anticipation of any trouble until McCloy started to draw his pistol.

On the other hand, the commonwealth proved by three or four witnesses threats that Turk had made to kill McCloy, one that day, one as late as ten days before the shooting, another in April, 1929, another the year before, and one about four years before that. The commonwealth also proved that Turk was drinking on the day of the shooting and had been drinking for several days. On the other hand, he testified and proved by several witnesses that he was entirely sober. He denied making any of the threats as stated by the witnesses for the commonwealth.

It is earnestly insisted for the appellant that the judgment should be reversed for the following reasons: (1) The court erred in changing the venue to Hickman county. (2) The court erred in his rulings on the competency of the proposed jurors and prejudiced the defendant's rights to a fair trial by what he said in the presence of the jurors. (3) The court erred in the admission and rejection of testimony. (4) The court erred in instructing the jury. (5) Misconduct of the prosecuting attorney on the trial of the case and in the argument to the jury.

1. By section 1109, Kentucky Statutes, the court in such cases must "order the trial to be had in some other adjacent county to which there is no valid objection . . . and if the judge is satisfied that a fair trial can not be had in an adjacent county, he may order the trial to be had in the most convenient county in which a fair trial can be had." The purpose of the provision is to provide for a fair trial. It does not mean that the transfer may not be made to an adjacent county to which

the defendant objects. It only means that the case must be transferred to an adjacent county if a fair trial can be had there. The court heard the testimony of fifteen witnesses showing that a fair trial could he had in Hickman county. The well-settled rule is that the court is not bound by the affidavits of the defendants objecting to a particular county, Adkins v. Com., 98 Ky. 539, 33 S. W. 948, 17 Ky. Law Rep. 1091, 32 L. R. A. 108, and that the selection of the county to which the case shall be sent for trial is discretionary with the court, Tolliver v. Com., 165 Ky. 312, 176 S. W. 1190. His judgment will not be reversed here unless his discretion is abused. Schleeter v. Com., 218 Ky. 72, 290 S. W. 1075; Hutsell v. Com., 225 Ky. 492, 9 S. W. (2d) 132. There was no abuse of discretion here in transferring the case to Hickman county under the evidence.

2. Section 281 of the Criminal Code of Practice provides that the decisions of the court upon challenges to the panel and for cause shall not be subject to exception. Under this provision it has been often held that this court cannot reverse rulings of the circuit court in the selecting of a jury in a criminal case. Harris v. Com., 163 Ky. 781, 174 S. W. 476; Smith v. Com. 204 Ky. 435, 264 S. W. 1059, and cases cited. The court upon reading the record does not find that anything occurred in the selection of the jury that in any way prejudiced the defendant in having a fair trial on the real merits of his case, at least so far as the court was concerned.

3. On the direct examination of Mrs. McCloy by the commonwealth she was permitted to state, over the objection of the defendant, that she had been told that evening that Turk had said the night before that he was going to kill his wife and her husband both and that when she went to the store she told her husband this. On her cross-examination by the defendant she stated that her daughter had told her this on the way to Fulton that day and she so told her husband. The defendant then moved again to exclude it all from the jury, and the court overruled the motion. When the defendant was on the stand testifying he offered to testify that he had not told his wife this. The court refused to allow him to so testify, and to this he excepted. As the case was presented to the jury it was shown by the proof that the defendant's wife had stated that he had made this threat to kill her father that day, and this evidence stood admitted as true. It was clearly very prejudicial,

if inadmissible. The rule is that the wife cannot testify against the husband in a criminal case. The rule is also that hearsay is inadmissible. The Commonwealth could not get into the case what the wife had said out of court when the wife was incompetent to testify in court to these facts as a witness. The case presented here is not whether McCloy had reasonable grounds to believe that he was in danger at the hands of Turk. Any fact known to McCloy giving him reasonable grounds to apprehend danger would be competent in his favor if he had been on trial for the shooting of Turk. Shepherd v. Com., 119 Ky. 931, 85 S. W. 191, 27 Ky. Law Rep. 376; but when Turk was on trial for shooting McCloy no hearsay was competent against him, and what his wife had said not in his presence could not be admitted against him. So far as he is concerned his rights are not affected in any way by what Mrs. McCloy told her husband not in his presence and without his knowledge. The court therefore necessarily concludes that the above evidence was incompetent and should on the defendant's motion have been excluded. Quite an amount of testimony by Mrs. McCloy was admitted to the effect that some one in the store said to her when the shooting occurred that Turk would kill her too and she then ran to different places in the building. All of this should have been excluded. None of it occurred in the presence of Turk, and all of it was after the shooting.

The commonwealth was allowed to prove by one witness a threat that Turk had made against McCloy four years before and about the time that the trouble was up in the family. This was too remote and should not have been allowed. Stewart v. Com., 235 Ky. 673, 32 S. W. (2d) 29. J. H. Gothes testified to a threat made by Turk a few minutes before the homicide, and between the time he was at McCloy's house and the time he appeared at the ice cream parlor. Turk offered a witness to contradict Gothes and offered to prove by him that he was present, and that Turk did not say this. The court refused to allow this to be shown, although Turk showed that he was surprised by the testimony of Gothes and had not put the witness under rule, for the reason that he did not know this was coming up in the case. The witnesses had all been put under the rule, but this man had not been put under the rule because the defendant had no idea he would need him. In such a case the defendant should not be denied important testimony where he had

exercised ordinary diligence to prepare his case. Under the circumstances the court should have allowed the witness to testify.

4. The instructions to the jury are not complained of, except instruction 6, which is, in substance, copied from Smith v. Com., 215 Ky. 815, 287 S. W. 8. The only difference in the instructions being that where that instruction used the words, "he willfully and feloniously brought on the difficulty by making demonstrations to shoot," etc. The instruction here used these words, "he willfully and feloniously brought on the difficulty by advancing upon and by making demonstrations to shoot." It will be seen that the only difference between the instructions, so far, is the use of the words "by advancing upon." But under the instruction two things were necessary; both the advancing and the making of demonstrations to shoot. One without the other did not determine the defendant's rights. The court therefore concludes that there was no substantial error in the instruction, but, as the case must be tried again, for the reasons above indicated, the circuit court on another trial will give the whole instruction approved in the case above referred to. That instruction also contains a clause (which was omitted from the court's instruction here) submitting to the jury the question of mutual combat.

5. The rule is well settled that this court cannot consider any complaint as to the argument of the prosecuting attorney, unless objection is made in the circuit court and exception is taken to the ruling of the circuit court, and that all this must appear from the bill of exceptions. The record does not show that the court was called upon at any time to make any ruling or that he made any error in any ruling in these matters.

Judgment reversed, and cause remanded for a new trial.